# FOR PUBLICATION

ATTORNEY FOR APPELLANTS:

**CARL PAUL LAMB**
Carl Lamb and Associates
Bloomington, Indiana

ATTORNEYS FOR APPELLEES:

**SCOTT P. WHONSETLER**
**JAMES N. MARTIN, JR.**
Whonsetler & Johnson, PLLC
Louisville, Kentucky

**ROBERT G. ZEIGLER**
**JENNIFER A. PADGETT**
Zeigler Cohen & Koch
Indianapolis, Indiana

FILED
Nov 20 2013, 10:04 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| THOMAS HAGGERTY AND, CATHY HAGGERTY, | ) |
| Appellants/Cross-Appellees, | ) |
| vs. | ) No. 53A01-1210-CT-472 |
| ANONYMOUS PARTY 1, | ) |
| Appellee, | ) |
| ANONYMOUS PARTY 2, AND ANONYMOUS PARTY 3, | ) |
| Appellees/Cross-Appellants. | ) |

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Frances G. Hill, Judge
Cause No. 53C06-1001-CT-177

**November 20, 2013**

**OPINION - FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

In the winter of 2008, pawn-shop owner Thomas Haggerty was hospitalized for complications related to his alcoholism. Immediately after his release from the hospital, he traveled to a treatment facility in Indianapolis, but he became agitated when professionals there recommended in-patient treatment. He refused treatment and informed staff and security officers that he would walk back to his home in Bloomington, despite the fact that it was nighttime and the temperature was well below freezing. Security officers took him to a nearby medical facility, where he was detained and evaluated. He was treated and released four days later.

Thomas and his wife Cathy (collectively, "the Haggertys") later filed a proposed medical-malpractice complaint against three parties ("the anonymous parties") involved in Thomas's detention. The Haggertys also filed an action against the same parties in Monroe Circuit Court. The anonymous parties filed motions for summary judgment, arguing that they were immune from liability under Indiana law. The trial court granted summary judgment for the first anonymous party, AP1, but denied the joint summary-judgment motion of the remaining parties, AP2 and AP3. The Haggertys appealed the grant of summary judgment. AP2 and AP3 filed a belated motion to certify the trial court's order for interlocutory appeal. The trial court granted the belated motion, and this Court accepted jurisdiction over the combined appeal.

The parties make a number of arguments on appeal. The main arguments, however, pertain to jurisdiction and immunity. The Haggertys argue that the trial court did not have jurisdiction to rule on the issue of immunity because that issue was reserved

for the medical review panel. They also argue that none of the anonymous parties are entitled to immunity under Indiana law because they violated Thomas's personal or civil rights.

We conclude that the trial court had jurisdiction to rule on the issue of immunity because it is an affirmative defense. We also conclude that the Haggertys' suit against the anonymous parties is barred by statutory immunity. We affirm the trial court's grant of summary judgment, on immunity grounds, to AP1. We conclude that there is no genuine issue of material fact as to whether immunity also applies to AP2 and AP3; thus, we reverse the trial court's denial of their motion for summary judgment. We affirm in part and reverse in part.

## Facts and Procedural History

Thomas Haggerty, a pawn-shop owner living in Bloomington, Indiana, has a long history of alcohol abuse. By age fifty-eight, Thomas consumed twelve beers and a liter of vodka daily. One day in January 2008, Thomas was hospitalized after he lost consciousness at his home. Doctors at a local hospital determined that Thomas had experienced a grand-mal seizure.

Thomas was hospitalized for ten days. During this time he was treated for alcohol withdrawal and severe anemia caused by his alcoholism. Thomas was also treated in the hospital's Behavioral Care Unit for other alcohol-related complications. On Wednesday, January 31, Thomas was discharged. The plan was that Thomas would travel immediately to AP1, a facility in Indianapolis, to receive treatment for his alcoholism.

3

On the day he was discharged, Cathy drove Thomas to AP1. When they arrived that evening, Thomas was upset to learn that he needed in-patient treatment. He became uncooperative and walked out of AP1. Although the temperature was about eight degrees, Thomas proclaimed he would walk from Indianapolis to his home in Bloomington, a distance of approximately fifty miles.

AP1 called security officers at AP2, a nearby medical facility, and told them that Thomas had left the facility against medical advice and was threatening to walk to Bloomington. AP2's security officers found Thomas walking along a nearby road and stopped to speak to him. Cathy arrived and told the officers that Thomas had a history of alcohol abuse and was supposed to be receiving in-patient treatment for his alcoholism at AP1. Thomas refused to return to the facility and insisted he would walk home. AP2's security officers restrained Thomas and took him to AP2.

After Thomas arrived at AP2, a doctor completed an application for emergency detention. In the application, the doctor noted that Thomas had a psychiatric disorder, was an alcoholic, and posed a danger to himself because he was threatening to walk to Bloomington. The doctor also indicated his belief that if Thomas was not restrained, he would kill himself. Appellants' Confidential App. p. 211-12. Thomas was admitted to AP2 for treatment.

Other AP2 doctors and medical personnel evaluated Thomas. Every evaluation indicated that Thomas was suffering from a number of alcohol-related complications.[1] The evaluations were conflicting, however, as to Thomas's suicide risk—an inpatient

---

[1] Thomas was primarily diagnosed with liver disease with encephalopathy, suspected cirrhosis and hepatomegaly, chronic alcohol dependence, suspected alcohol-withdrawal seizure, confusion, hypertension, hypokalemia, and severe anemia. *See* Appellants' Confidential App. p. 208.

4

suicide evaluation stated that Thomas had no suicidal ideation, but a daily flow sheet noted that Thomas posed a moderate suicide risk. *See* Appellants' Confidential App. p. 298, 301.

Thomas was released on Tuesday, February 5. He received additional treatment at AP1 before returning to his home in Bloomington.

The Haggertys filed a proposed complaint for medical malpractice in 2010. AP1, AP2, and AP3—a corporate entity related to AP2—were named as defendants in the proposed complaint.[2] The Haggertys also filed an action against the same parties in Monroe Circuit Court. AP1 filed a motion for preliminary determination of law for summary judgment. AP2 and AP3 likewise filed a joint motion for preliminary determination for summary judgment. All three anonymous parties argued that they were immune from liability under Indiana Code section 12-26-2-6, which grants immunity to those who assist or participate in proceedings for an individual's detention or commitment.

The Haggertys filed a brief in opposition to the summary-judgment motions.[3] They designated eleven exhibits as evidence. These exhibits included portions of Thomas's medical records, the application for emergency detention, and other medical documents. The Haggertys did not designate any affidavits. Weeks later, the Haggertys sought to amend their designated evidence to add affidavits of Thomas and Cathy, their

---

[2] A health-care provider must be identified in a summons to effect service, but must remain anonymous during the pendency of the medical review panel proceedings in a complaint filed in state court. *See* Ind. Code § 34-18-8-7; *Hubbard v. Columbia Women's Hosp. of Indianapolis*, 807 N.E.2d 45, 60, n.2 (Ind. Ct. App. 2004), *reh'g denied*.

[3] Though properly captioned as motions for preliminary determination of law for summary judgment, we refer to them as summary-judgment motions for simplicity.

amended proposed complaint, and three additional portions of Thomas's medical records. The anonymous parties objected to the Haggertys' motion to amend their designated evidence.

After hearing oral argument, the trial court issued an order on the pending motions. *See* Appellants' App. p. 133. The trial court granted the Haggertys' motion to amend their designated evidence. The court also concluded that it had jurisdiction to preliminarily determine the issue of immunity. It determined that there was no genuine issue of material fact that AP1 was immune and granted AP1's summary-judgment motion. *Id.* However, it concluded that there was a genuine issue of material fact regarding AP2 and AP3's immunity, so it denied summary judgment as to AP2 and AP3. *Id.*

The Haggertys filed a motion to correct error, and AP2 and AP3 filed a motion to reconsider. The trial court denied both motions. The Haggertys filed notice of appeal. AP2 and AP3 later filed a belated motion requesting certification of the court's order for interlocutory appeal. AP2 and AP3 sought to join the Haggertys' pending appeal against AP1, which involved the same issues raised by AP2 and AP3 in their motion for summary judgment. The trial court granted the belated motion for certification, and this Court accepted jurisdiction over the combined appeal.

**Discussion and Decision**

**I. Jurisdiction**

The Haggertys first challenge the trial court's authority to preliminarily determine the issue of immunity.

6

A trial court's jurisdiction to intervene in the workings of a medical review panel through a motion for preliminary determination of law is governed by Indiana Code section 34-18-11-1. In relevant part, the Section provides that:

(a) A court having jurisdiction over the subject matter and the parties to a proposed complaint filed with the commissioner under this article may, upon the filing of a copy of the proposed complaint and a written motion under this chapter, do one (1) or both of the following:

(1) preliminarily determine an affirmative defense or issue of law or fact that may be preliminarily determined under the Indiana Rules of Procedure; or

(2) compel discovery in accordance with the Indiana Rules of Procedure.

(b) The court has no jurisdiction to rule preliminarily upon any affirmative defense or issue of law or fact reserved for written opinion by the medical review panel under IC 34-18-10-22(b)(1), IC 34-18-10-22(b)(2), and IC 34-18-10-22(b)(4).

In *Griffith v. Jones*, our Supreme Court consulted the Indiana Trial Rules and defined trial courts' jurisdiction in this context explicitly:

Our review of the rules reveals that Trial Rule 8(C) contains a listing of affirmative defenses, Trial Rule 12(B) and (C) sets forth a listing of matters which can be preliminarily determined by motion, and Trial Rules 26 through 37, inclusively, contain the discovery rules. *We hold that Indiana Code section 16-9.5-10-1 specifically limits the power of the trial courts of this State to preliminarily determining affirmative defenses under [the] Trial Rules*, deciding issues of law or fact that may be preliminarily determined under Trial Rule 12(D), and compelling discovery pursuant to Trial Rules 26 through 37, inclusively.

602 N.E.2d 107, 110 (Ind. 1992) (emphasis added).[4]

---

[4] *Griffith* references Indiana Code section 16-9.5-10-1, the predecessor statute to Section 34-18-11-1.

Thus, under *Griffith*, trial courts may preliminarily determine affirmative defenses in medical-malpractice cases. Indiana Trial Rule 8(C), which sets forth affirmative defenses, does not specifically refer to immunity; it provides that "a responsive pleading shall set forth affirmatively and carry the burden of proving: [list of defenses] and any other matter constituting an avoidance, matter of abatement, or affirmative defense." The list of affirmative defenses found in the rule is not exhaustive. *Willis v. Westerfield*, 839 N.E.2d 1179, 1185 (Ind. 2006) (citing *Paint Shuttle, Inc. v. Cont'l Cas. Co.*, 733 N.E.2d 513, 524 (Ind. Ct. App. 2000), *trans. denied*).

Whether a defense is affirmative "depends upon whether it controverts an element of a plaintiff's prima facie case or raises matters outside the scope of the prima facie case." *Id.* (citations omitted). An affirmative defense is a defense "upon which the proponent bears the burden of proof and which, in effect, admits the essential allegations of the complaint but asserts additional matter barring relief." *Id.* In other words, it must "admit the allegations of the complaint but nevertheless excuse fault." *Id.* By asserting immunity in this case, the anonymous parties admitted that they detained Thomas but argued that their actions were nevertheless excused because Indiana Code section 12-26-2-6 grants them immunity. We conclude that immunity is an affirmative defense, and for this reason, the trial court had jurisdiction to rule on the issue.[5] *See Griffith*, 602 N.E.2d at 110.[6]

---

[5] A search of Indiana cases reveals that our Courts have repeatedly referred to immunity as an affirmative defense. *See Catt v. Bd. of Comm'rs of Knox Cnty.*, 779 N.E.2d 1, 2 (Ind. 2002) ("The County filed its answer, which included the affirmative defense[] of statutory immunity . . . ."); *State v. Rendleman*, 603 N.E.2d 1333, 1334 (Ind. 1992) ("As an affirmative defense, the State asserted immunity from liability by virtue of [the Tort Claims Act]."); *City of S. Bend v. Dollahan*, 918 N.E.2d 343, 349

In reaching this conclusion, we reject the Haggertys' argument that the issue of immunity was reserved for the medical review panel. This Court has concluded that some determinations—such as standard-of-care determinations and others that require an expert opinion—are reserved for medical review panels; thus, trial courts may not rule on those issues. *See Miller v. Martig*, 754 N.E.2d 41, 44 (Ind. Ct. App. 2001); *Rocca v. S. Hills Counseling Ctr., Inc.*, 671 N.E.2d 913, 915 (Ind. Ct. App. 1996) (citing *Dixon v. Siwy*, 661 N.E.2d 600 (Ind. Ct. App. 1996)), *reh'g denied*. But the trial court did not need an expert opinion to determine whether the anonymous parties could claim immunity under Section 12-26-2-6; this is a legal determination that the court was capable of making on its own.

We conclude that the trial court had jurisdiction to preliminary determine the issue of immunity.

## II. Certification

The Haggertys contend that the trial court erred by granting AP2 and AP3's motion for belated certification. The Haggertys also challenge this Court's decision to accept jurisdiction over AP2 and AP3's interlocutory appeal.

### A. Trial Court

We are not bound by a trial court's determination on the issue of certification. *In re Buchanan v. Vowell*, 926 N.E.2d 515, 518 (Ind. Ct. App. 2010) (citation omitted). We will reverse the trial court's decision only for an abuse of discretion, which exists when

(Ind. Ct. App. 2009) ("The school corporation had failed to assert the affirmative defense of governmental immunity . . . ."), *trans. denied*.

[6] We need not address the parties' arguments regarding the applicability of Indiana Trial Rules 12(B) or 12(C) because we conclude that immunity is an affirmative defense under Trial Rule 8(C).

the trial court's decision is clearly against the logic and effects of the facts and circumstances before the court or the reasonable and probable deductions to be drawn therefrom. *Id.* (citing *Nw. Towing & Recovery v. State*, 919 N.E.2d 601 (Ind. Ct. App. 2010)).

A motion requesting certification of an interlocutory order must be filed in the trial court within thirty days of the interlocutory order. Appellate Rule 14(B)(1)(a). AP2 and AP3 filed a motion requesting certification 105 days after the interlocutory order was issued. However, a trial court may permit a belated motion for good cause. *Id.* The Haggertys contend that AP2 and AP3 did not show good cause justifying the belated grant of certification.

There is a dearth of cases discussing good cause in this context. *Buchanan*, 926 N.E.2d at 518. Nonetheless, we cannot say that the trial court abused its discretion in this case. AP2 and AP3 sought belated certification because the Haggertys appealed the trial court's grant of summary judgment to AP1. AP1's summary-judgment motion was based on its claim of immunity under Section 12-26-2-6. Thus, the issues in the Haggerty-AP1 appeal are the same as those raised in AP2 and AP3's cross-appeal. Granting AP2 and AP3's belated motion for certification gave this Court the option to resolve, in one appeal, the immunity claims raised by all three anonymous parties and refuted by the Haggertys. We find no error here.

### B. Court of Appeals

The Haggertys also challenge this Court's decision to accept jurisdiction over AP2 and AP3's interlocutory appeal. Essentially, the Haggertys ask this Court to reconsider

our motions panel's decision. Though uncommon, this request is not entirely unheard of. "[I]n rare instances reconsideration of motions to accept or oppose discretionary interlocutory appeals may be appropriate, such as where a successive motion demonstrates good cause why the motions panel's initial ruling should be reconsidered." *Bridgestone Ams. Holding, Inc. v. Mayberry*, 854 N.E.2d 355, 360 (Ind. Ct. App. 2006), *summarily aff'd in relevant part*, 878 N.E.2d 189, 191 n.2 (Ind. 2007). Though we have the inherent authority to reconsider any decision while an appeal remains pending, we are reluctant to overrule our motions panel. *Simon v. Simon*, 957 N.E.2d 980, 987 (Ind. Ct. App. 2011). We may do so, however, where a more complete record reveals clear authority establishing that our motions panel erred. *Id.* For example, in *Simon*, we dismissed a discretionary interlocutory appeal when it became clear after briefing that the appellant did not have standing to pursue the appeal. *Id.* at 989-90.

Here, the Haggertys do not explain how our motions panel clearly erred. They argue that AP2 and AP3's interlocutory appeal should not proceed because AP2 and AP3 had a dilatory motive. Appellants' Br. p. 22. They also argue that the interlocutory appeal prejudices them and the judicial process. *Id.* But they do not explain how allowing the appeal to proceed prejudices them, particularly in light of the fact that AP2 and AP3 raise the same claims the Haggertys had to respond to in their appeal against AP1. Nor do we see how the appeal prejudices the judicial system; as explained earlier, allowing AP2 and AP3's appeal to proceed gives this Court the option to decide, in one appeal, the immunity claim raised by all three anonymous parties. And the Haggertys

11

offer no proof that the belated motion was motivated by bad faith rather than a simple attempt to consolidate legal claims arising from Thomas's detention.

For these reasons, we decline to overrule our motions panel's decision to accept jurisdiction over AP2 and AP3's interlocutory appeal.

### III. Motion to Amend Designated Evidence

AP2 and AP3 contend that the trial court erred when it granted the Haggertys' motion to amend their designated evidence.

Indiana Trial Rule 56(C) provides that an adverse party shall have thirty days after service of a summary-judgment motion to serve a response and any opposing affidavits. When filing a response, Rule 56(C) requires the adverse party to designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. "A party opposing the motion shall also designate to the court each material issue of fact which that party asserts precludes entry of summary judgment and the evidence relevant thereto." Ind. Trial Rule 56(C).

Rule 56(E) provides that the trial court "may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits." AP2 and AP3 argue that this Court recently interpreted Rule 56(E) as permitting only affidavits, not other designated evidence, to be supplemented after the deadline for submission of designated evidence. *See* Appellees'/Cross-Appellants' Br. p. 19 (citing *Auto-Owners Ins. Co.*, 973 N.E.2d 1179 (Ind. Ct. App. 2012), *trans. denied*). But we need not reach

this issue; for the purposes of our analysis, we will assume that the trial court considered all the evidence appropriately.

## IV. Immunity

We now turn to the issue of immunity. The Haggertys argue that the trial court erred by granting AP1's summary-judgment motion. AP2 and AP3 argue that the trial court erred when it denied their summary-judgment motion.

A motion for preliminary determination of law under Indiana Code section 34-18-11-1, which is unique to the Indiana Malpractice Act, is a procedure that authorizes the trial court to assert jurisdiction over threshold issues before a medical review panel has acted. *Hodge v. Johnson*, 852 N.E.2d 650, 652 (Ind. Ct. App. 2006) (citation omitted), *trans. denied*. When evidence accompanies a motion for preliminary determination, the motion is subject to the same standard of appellate review as a summary-judgment motion. *Id.* "Where the evidence shows that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate." *Id.* "We construe all facts and reasonable inferences drawn therefrom in a light most favorable to the non-moving party." *Id.* When a pure question of law is presented, we review the matter *de novo. Id.* (citation omitted).[7]

A person who without malice, bad faith, or negligence participates in proceedings for the detention or commitment of an individual or assists in the detention, care, and treatment of an individual alleged or adjudged to have a mental illness is immune from

---

[7] The Haggertys note that trial court did not issue findings with its order granting summary-judgment as to AP1 and denying it as to AP2 and AP3. But "special findings are not required in summary-judgment proceedings and are not binding on appeal." *Ind. Reg'l Recycling, Inc. v. Belmont Indus., Inc.*, 957 N.E.2d 1279, 1282 (Ind. Ct. App. 2011), *trans. denied*.

any civil or criminal liability that might otherwise be imposed as a result of the person's actions. Ind. Code § 12-26-2-6(a). Such immunity does not, however, permit a person to physically abuse an individual or deprive an individual of a personal or civil right except in accordance with the commitment procedures. I.C. § 12-26-2-6(b).

At issue here is subsection (b); the Haggertys argue that the anonymous parties cannot claim immunity because they deprived Thomas of his personal or civil rights. Specifically, they claim that his personal or civil rights were violated because he was "forcibly placed in a vehicle by [AP2] security staff, driven to [AP2], and placed in a small bathroom for approximately four (4) hours before finally being admitted into [AP2]." Appellants' Br. p. 13. They also argue that Thomas's rights were violated because [AP2] allowed Thomas to be detained even though no one other than the doctor who initially evaluated Thomas found him to be a suicide risk. *Id.* Although the Haggertys assert these claims generally against all three anonymous parties, it is helpful to address AP1 separately from AP2 and AP3.

### A. AP1's Immunity Claim

The Haggertys argue that Thomas's personal or civil rights were violated when he was detained and transported to AP2 and during his detention at AP2. Critically, none of this involved AP1. AP1's only involvement in Thomas's detention was the phone call it made to AP2 security officers to alert them that he had left the facility against medical advice and was threatening to walk to Bloomington. Even if this can be considered participation in Thomas's detention, the Haggertys do not mention the phone call when

14

arguing that Thomas's personal or civil rights were violated, much less argue persuasively that it violated those rights.

As the party moving for summary judgment, AP1 bears the burden of establishing that no genuine issue of material fact exists. *Cole v. Gohmann*, 727 N.E.2d 1111, 1113 (Ind. Ct. App. 2000). "Once the moving party has met this burden with a prima facie showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist." *Id.* (citation omitted). AP1 made a prima facie showing that no genuine issue of material fact exists as to its immunity; however, the Haggertys have not established the contrary. We conclude that the trial court properly granted summary judgment to AP1.

### B. AP2 and AP3's Immunity Claim

We first address the Haggertys' claim that Thomas's personal or civil rights were violated when he was detained by AP2's security officers and transported to AP2. Indiana Code section 12-26-4-1 permits a law-enforcement officer, "having reasonable grounds to believe that an individual has a mental illness, is either dangerous or gravely disabled, and is in immediate need of hospitalization and treatment," to "apprehend and transport the individual to the nearest appropriate facility."

Here, AP2's security officers were alerted that Thomas had left AP1 against medical advice. They found Thomas walking along a road, threatening to walk from Indianapolis to Bloomington on a winter night in below-freezing temperatures. Thomas's wife, Cathy, told the officers that Thomas had a history of alcohol abuse and was supposed to be receiving in-patient treatment for his alcoholism at AP1. Thomas refused

15

to return to the facility and insisted he would walk home. Based upon this, the security officers apprehended him and transported him to AP2. Although the Haggertys argue that "he was illegally restrained before he was detained [at AP2]," Appellants' Br. p. 20-21, Section 12-26-4-1 permits law-enforcement officers to do exactly what AP2's security officers did here.[8]

Next, the Haggertys claim that Thomas's personal or civil rights were violated when he was placed in a small bathroom for approximately four hours before being admitted to AP2. The parties do not explain the circumstances surrounding Thomas's placement in a bathroom, other than noting that he left the bathroom at one point to talk to Cathy. Assuming that this is true, as we must, the evidence shows that Thomas was detained because he posed a threat to himself, and he was transported to the nearest appropriate facility as required by Section 12-26-4-1. There is no dispute that AP2 is an appropriate facility under the statute.

Finally, the Haggertys argue that Thomas's personal or civil rights were violated when he was detained at AP2 because no one other than the doctor who initially evaluated Thomas found him to be a suicide risk. *Id.* at 13. This argument fails for two reasons: first, the record shows that at least one other medical professional found Thomas to be a moderate suicide risk. Second, and more importantly, Indiana Code section 12-26-5-1 allowed AP2 to detain Thomas regardless of his suicide risk.

Section 12-26-5-1 provides that an individual may be detained in an appropriate facility for not more than seventy-two hours, excluding Saturdays, Sundays, and legal

---

[8] Although the Haggertys repeatedly note that force was used to restrain Thomas and take him into custody, they do not argue that the force used was unreasonable.

16

holidays, if a written application for detention is filed with the facility. The application must contain a statement of the applicant's belief that the individual is "mentally ill and either dangerous or gravely disabled" and "in need of immediate restraint," as well as a statement by at least one physician that, based on an examination or information given the physician, the individual may be mentally ill and either dangerous or gravely disabled. Ind. Code § 12-26-5-1(b). The section does not require that the individual be suicidal.

In the application for emergency detention, the doctor examining Thomas noted that Thomas had a psychiatric disorder, was an alcoholic, and posed a danger to himself because he was threatening to walk home to Bloomington. The doctor also indicated his belief that if Thomas was not restrained, he would kill himself. Appellants' Confidential App. p. 211-12. According to the plain language of Section 12-26-5-1, this was sufficient. And the Haggertys do not argue that Thomas was *not* mentally ill and either dangerous or gravely disabled and in need of immediate restraint; they merely debate his suicide risk. We conclude that the Haggertys have not shown that Thomas was detained improperly or in a way that violated his personal or civil rights.

As the parties moving for summary judgment, AP2 and AP3 have the burden of establishing that no genuine issue of material facts exists. *Cole*, 727 N.E.2d at 1113. "Once the moving party has met this burden with a prima facie showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist." *Id.* (citation omitted). AP2 and AP3 made a prima facie showing that no genuine issue of material fact exists as to their immunity; the Haggertys failed to establish the contrary. We

17

therefore conclude that the trial court should have granted AP2 and AP3's summary-judgment motion.

Because the anonymous parties met their burden of establishing that there are no genuine issues of material fact as to their immunity in this case, we affirm the trial court's grant of summary judgment to AP1. We reverse the denial of AP2 and AP3's summary-judgment motion and we remand with instructions for the trial court to enter summary judgment for AP2 and AP3.

Affirmed in part and reversed in part.

FRIEDLANDER, J., concurs.

BAKER, J., concurs in part and dissents in part with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

THOMAS HAGGERTY AND    )
CATHY HAGGERTY,    )
    )
    Appellants/Cross-Appellees,    )
    )
    vs.    )    No. 53A01-1210-CT-472
    )
ANONYMOUS PARTY 1,    )
    )
    Appellee,    )
    )
ANONYMOUS PARTY 2, AND    )
ANONYMOUS PARTY 3,    )
    )
    Appellee/Cross-Appellants    )

**BAKER, Judge, concurring in part and dissenting in part.**

While I concur with the majority that the trial court properly granted summary judgment as to AP1, I part ways with the majority's conclusion that AP2 and AP3 met their burden of establishing that there were no genuine issues of material fact with respect to immunity. As stated by the majority, immunity does not permit a person to physically abuse a person or deprive that person of a civil right except in accordance with commitment procedures. Ind. Code § 12-26-2-6(b).

Here, the facts as alleged by the Haggertys place Thomas in a small bathroom for approximately four hours before being admitted to AP2. The majority concedes that "the parties do not explain the circumstances surrounding Thomas's placement in a bathroom,

19

other than noting that he left at one point to talk to Cathy." Slip op. at 16. In my view, this creates a genuine issue of material fact sufficient to preclude summary judgment and, consequently, immunity as to AP2 and AP3. Indeed, this incident is precisely the type of issue that the medical review panel should assess to determine whether the actions of AP2 were appropriate. Accordingly, I would have affirmed the trial court's denial of summary judgment.