



FILED

May 09 2024, 8:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Carol Fluhr, Individually and as Personal Representative of the Estate of Ed Fluhr, Deceased,

*Appellant-Respondent/Plaintiff*

v.

Anonymous Doctor 1, Anonymous Medical Group 1, Anonymous Doctor 2, Anonymous Medical Group 2, Anonymous Medical Center 1, Anonymous Doctor 4, and Anonymous Medical Center 2,

*Appellees-Third-Party Defendants*

and

Anonymous Doctor 3 and Anonymous Medical Group 3,

*Appellees-Petitioners/Defendants*

and

Amy L. Beard, Commissioner, Indiana Department of Insurance,

*Third-Party Respondent*

May 9, 2024

Court of Appeals Case No.
23A-MI-1632

Appeal from the Marion Superior Court

The Honorable Gary L. Miller, Judge

Trial Court Cause No.
49D03-2212-MI-41670

**Opinion by Judge Weissmann**
Judges Mathias and Tavitas concur.

**Weissmann, Judge.**

[1] On April 28, 2020, during the early days of the global COVID-19 pandemic, Carol Fluhr's husband, Ed Fluhr, died of a stroke. Carol, individually and as the personal representative of Ed's estate, contends that the defendants misdiagnosed Ed and delayed critical care, thereby contributing to his death. Defendants moved for summary judgment on grounds that they were immune from Carol's complaint under Indiana's COVID-19 immunity statute. The trial court agreed. We affirm.

## Facts[1]

[2] On March 6, 2020, Governor Holcomb issued Executive Order 20-02, declaring

---

[1] We held oral argument in this case on April 4, 2024, and thank counsel for their excellent advocacy. We also thank the amici, the Indiana State Medical Association and the American Medical Association, for their helpful brief.

a Public Health Emergency for the COVID-19 pandemic. The next month, on April 23, EMTs brought Ed to Anonymous Medical Center 1 with symptoms of nausea, vomiting, and a headache. While en route, EMTs also performed a stroke assessment test on Ed that reported, at that time, no signs of a stroke. Arriving at Medical Center 1, doctors initially thought that Ed had COVID-19 and ordered a test to confirm. Doctors also had Ed undergo a head CT scan, which did not reveal any abnormalities. But while the COVID-19 test results were still pending, Ed's condition deteriorated enough that he was sedated and transferred to Anonymous Medical Center 2.

[3] Doctors at Anonymous Medical Center 2 also suspected Ed of being COVID-19 positive. At that time, about six weeks after Governor Holcomb's executive order, emergency COVID-19 protocols required placing patients suspected of having COVID-19 in contact isolation. The protocols restricted health care providers from performing comprehensive full-contact physical examinations while patients were suspected to have COVID-19. But doctors could still perform more cursory physical examinations. The protocols delayed a physical exam of Ed by several hours.

[4] Ed's initial exam did not raise any immediate concerns. But his medical chart noted that a more thorough, full-contact exam would have been performed if not for Ed's suspected COVID-19 diagnosis. Ed then received two more COVID-19 tests at Medical Center 2. All three tests ultimately came back negative. After two days in Medical Center 2, doctors eventually diagnosed Ed with a stroke, which was his eventual cause of death.

Carol filed a medical malpractice claim against the attending doctors and associated medical centers (collectively, Defendants). She argued that Defendants' failure to adequately examine Ed when he arrived caused his stroke to go undiagnosed and contributed to his death. Carol provided an affidavit from an expert witness who stated that no "medical reason" prevented Defendants from properly diagnosing and treating Ed's stroke. *Id.* at 122.

Before the medical malpractice process began, Defendants moved for a preliminary determination that they were immune from Carol's suit and, if the trial court agreed, summary judgment on that basis.[2] Defendants' immunity claim arose under a new statute, Ind. Code § 34-30-13.5-1, *et seq.*, which gave health care providers civil liability immunity for services rendered during the COVID-19 emergency.

As part of their affirmative defense, Defendants' evidence conceded that more "complete and comprehensive physical exam[s] could have been performed on [Ed]" and that "more testing, evaluation, or treatment alternatives may have resulted in other differential diagnoses being considered and/or ruled out." Appellant's App. Vol. II, p. 75. But Defendants generally contended that the

---

[2] Under Indiana's Medical Malpractice Act (MMA), "before a party brings a medical malpractice action in an Indiana court, the MMA requires that the proposed complaint be presented to a medical review panel and that the panel render an opinion." *Ramsey v. Moore*, 959 N.E.2d 246, 250 (Ind. 2012) (citing Ind. Code § 34-18-8-4); *but see* Ind. Code § 34-18-11-1(a) (allowing a defendant to request an appropriate trial court to "preliminarily determine an . . . issue of law" before submitting the case to the medical review panel).

care Ed received followed policies designed to limit the spread of a deadly disease. The trial court granted Defendants' motions for summary judgment.

## Discussion and Decision

[8] In reviewing a summary judgment ruling, "[w]e apply the same standard as the trial court." *Shawa v. Gillette*, 209 N.E.3d 1196, 1199 (Ind. Ct. App. 2023). The party moving for summary judgment bears the initial burden to show that no genuine issue of material fact exists. *Id.* Summary judgment is improper if the moving party fails to meet this burden, or, if the burden is met, the nonmoving party in turn establishes a genuine issue of material fact. *Fox v. Barker*, 170 N.E.3d 662, 665 (Ind. Ct. App. 2021). Only the evidence specifically designated to the trial court will be considered. Ind. Trial Rule 56(. All factual inferences are construed in the nonmoving party's favor. *Id.* at 665-66.

[9] "When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim." *Sheets v. Birky*, 54 N.E.3d 1064, 1069 (Ind. Ct. App. 2016). Here, Defendants rely on the COVID-19 immunity statute as an affirmative defense. *See Haggerty v. Anonymous Party 1*, 998 N.E.2d 286, 291 (Ind. Ct. App. 2013) (noting that immunity is an affirmative defense to a medical malpractice claim).

[10] Thus, our analysis proceeds by determining whether Defendants can establish that no genuine issue of material fact exists and that they are immune from civil

liability as a matter of law. *Id.* at 294-95. We conclude that the trial court properly granted summary judgment.

## I. Defendants Have Statutory Immunity

## A.  Background of the COVID-19 Immunity Statute

The COVID-19 immunity statute was enacted as part of a broader bill, Public Law No. 166-2021, designed to insulate and protect areas of public life at risk from the pandemic. *See generally Mellowitz v. Ball State Univ.*, 221 N.E.3d 1214, 1218-19 (Ind. 2023) (discussing a separate section of Public Law No. 166-2021). Under the provision here, health care providers cannot be "held civilly liable for an act or omission relating to the provision or delay of health care services or emergency medical services arising from a state disaster emergency declared under IC 10-14-3-12 to respond to COVID-19." Ind. Code § 34-30-13.5-1(b)(1). The statute's operative language—"arising  from a state disaster emergency"— means an injury or harm:

> (1) caused by or resulting from an act or omission performed in response to a state disaster emergency declared under IC 10-14-3-12 to respond to COVID-19; and
>
> (2) arising from COVID-19.

Ind. Code § 34-6-2-10.5. Both sides agree that the first triggering condition, a state disaster emergency to respond to COVID-19, is met here.

"[A]rising from COVID-19," in turn, has a broad array of defined meanings, including:

(1) the implementation of policies and procedures to:

> (A) prevent or minimize the spread of COVID-19; and

> (B) reallocate or procure staff or resources for COVID-19.

(2) testing in response to COVID-19;

(3) monitoring, collecting, reporting, tracking, tracing, disclosing, or investigating COVID-19 exposure or other COVID-19 related information;

(4) using, designing, manufacturing, providing, donating, or servicing precautionary, diagnostic, collection, or other health equipment or supplies, including [PPE], for COVID-19;

(5) closing or partially closing to prevent or minimize the spread of COVID-19;

(6) delaying or modifying the scheduling or performance of a nonemergency medical procedure or appointment due to COVID-19;

(7) reasonable nonperformance of medical services due to COVID-19; and

(8) providing services or products in response to government appeal or repurposing operations to address an urgent need for [PPE], sanitation products, or other products necessary to protect the public from COVID-19.

Ind. Code § 34-6-2-10.4(c). Defendants argue they are immune from Carol's claims as their actions amounted to "the implementation of policies and procedures to . . . prevent or minimize the spread of COVID-19." Ind. Code § 34-6-2-10.4(c)(1)(A).

## B. Applying the COVID-19 Immunity Statute

[13] Defendants met their burden to show that they acted in line with policies designed to mitigate or prevent the spread of COVID-19. *See F.D. v. Ind. Dep't Child Servs.*, 1 N.E.3d 131, 136 (Ind. 2013) (holding that the "party seeking immunity bears the burden of demonstrating that its conduct is within the protection afforded by [an immunity statute]").

[14] Because Ed was suspected of having COVID-19, he was subject to isolation procedures then in place. During Ed's treatment, his doctors wrote in their care notes that they were "unable to perform a full contact physical exam of [Ed] due to Covid protocols at the hospital." Appellant's App. Vol. II, p. 68. This falls under the category for implementing policies and procedures designed to limit the spread of COVID-19. Ind. Code § 34-6-2-10.4(c)(1)(A). Thus, we have no difficulty in finding Defendants qualify for immunity here. *See Mills v. Hartford Healthcare Corp.*, 298 A.3d 605, 623 (Conn. 2023) ("The diagnosis and treatment of a patient with health care complications that the health care provider believed in good faith to be caused by COVID-19, as well as the prevention of the spread of COVID-19 to other patients, clearly constitute acts or omissions connected to the provision of health care services in support of the state's COVID-19 response.").

[15] Carol does not rebut this showing. Instead, she points out that there is no separate document in Defendants' designated evidence containing the Medical Centers' COVID-19 policies. Given this lack of first-hand proof, Carol argues that summary judgment is improper. We disagree.

"To obtain summary judgment, 'the movant must designate sufficient evidence to foreclose the nonmovant's reasonable inferences and eliminate any genuine factual issues.'" *Staat v. Ind. Dep't of Transp.*, 177 N.E.3d 427, 430 (Ind. 2021) (quoting *Butler v. City of Peru*, 733 N.E.2d 912, 915 (Ind. 2000)). There is no reasonable inference or genuine factual dispute that Defendants' actions were not governed by policies designed to limit the spread of COVID-19. Defendants' designated materials refer several times to the relevant aspects of the Medical Centers' COVID-19 policies; namely that Ed was placed in isolation while suspected of having COVID-19 and that certain physical examinations were deferred until the COVID-19 test results came back. Appellant's App. Vol. II, pp. 65, 74-75. In short, although we agree with Carol insofar as the designated evidence would be stronger with a copy of the written policies, regardless, Defendants met their burden of proof.

Carol then seeks to rebut Defendants' immunity through an affidavit from her own expert witness, who stated: "Based on [his] review of the medical records, there [was] *no medical reason* that any medical provider . . . was prevented from doing a complete and comprehensive physic[al] and/or medical exam." Appellant's App. Vol. II, pp. 119-22 (emphasis added). This statement does not rebut Defendants' immunity. Whether a medical reason justified Defendants' alleged failure to promptly perform a full contact physical examination is irrelevant to the *existence* of the COVID-19 protocols. *See Jarvis Drilling, Inc. v. Midwest Oil Producing Co.*, 626 N.E.2d 821, 825 (Ind. Ct. App. 1993) ("[F]actual disputes that are irrelevant or unnecessary will not be considered."). It is only

where "the evidence permits conflicting reasonable inferences as to *material facts*" that civil liability immunity will not be found. *Bules v. Marshall Cnty.*, 920 N.E.2d 247, 250 (Ind. 2010) (emphasis added).

[18] Because Carol does not rebut Defendants' designated evidence that the healthcare providers were acting under policies intended to prevent or minimize the spread of COVID-19, there is no genuine issue of material fact and Defendants are entitled to immunity as a matter of law.

## II. No Exception Applies to Defendants' Immunity

[19] The COVID-19 immunity statute excludes from its protections conduct resulting from "gross negligence, willful or wanton misconduct, fraud, or intentional misrepresentation." Ind. Code § 34-30-13.5-2. Carol asserts that there is a genuine issue of material fact about this exception because this is "a classic case of conflicting affidavits." Appellant's Br., p. 10. As our Supreme Court has recognized, "[i]n medical malpractice cases, expert opinions which conflict on ultimate issues necessarily defeat summary judgment." *Siner v. Kindred Hosp. Ltd. P'ship*, 51 N.E.3d 1184, 1190 (Ind. 2016).

[20] Carol's complaint alleges that Defendants "acted with gross negligence in the medical care and treatment of Ed[.]" Appellee (Anon. Doctor 3) Vol. II, pp. 10-27. In support, her designated evidence contains an affidavit claiming that "there [is] no medical reason that any medical provider . . . was prevented from doing a complete and comprehensive physician and/or medical exam." Appellant's App. Vol. II, p. 122.

On the other hand, Defendants claim the COVID-19 immunity statute's protections "would be worthless" if this case is allowed to proceed. Anonymous Doctor 3 Br., p. 35. In that vein, Defendants assert that "[t]he courts would be inundated with cases merely alleging gross negligence without factual support, compelling health care providers to litigate cases from which the legislature surely intended to protect them." *Id.*

As recently noted by this Court, "[t]he General Assembly has frequently used the phrases 'gross negligence' and 'willful or wanton misconduct' in statutes granting immunity from civil damages." *McGowen v. Montes*, 152 N.E.3d 654, 660 (Ind. Ct. App. 2020) (collecting statutes). The COVID-19 immunity statute, like other civil immunity statutes, does not define those phrases. Instead, the General Assembly appears content with our Supreme Court's definition of gross negligence as "a conscious, voluntary act or omission in reckless disregard of . . . the consequences to another party." *N. Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 465 (Ind. 2003) (quoting *Black's Law Dictionary* 1057 (7th Ed. 1999)). "[W]illful or wanton misconduct" similarly consists of either:

> 1) an intentional act done with reckless disregard of the natural and probable consequence of injury to a known person under the circumstances known to the actor at the time; or 2) an omission or failure to act when the actor has actual knowledge of the natural and probable consequence of injury and his opportunity to avoid the risk.

*Howard Cnty. Sheriff's Off. v. Duke*, 172 N.E.3d 1265, 1268 (Ind. Ct. App. 2021). "[T]he question of whether an act or omission constitutes gross negligence is

generally a question of fact, but the question may become one of law if 'the facts are undisputed and only a single inference can be drawn from those facts.'" *McGowen*, 152 N.E.3d at 661 (quoting *Miller v. Ind. Dep't of Workforce Dev.*, 878 N.E.2d 346 356 (Ind. Ct. App. 2007)).

[23] Here, the designated evidence does not show that Defendants acted with reckless disregard. Ed received multiple forms of treatment and medical examinations including several COVID-19 tests, physical examinations, intubation, stroke assessments, and a CT scan. All of this occurred in the thick of a global pandemic—with limited physical contact between the patient and healthcare providers to prevent the spread of COVID-19. But as Ed's condition worsened such that he required physical contact, like when he required intubation, Defendants properly and promptly acted. We find nothing in the designated materials to suggest that Defendants acted either grossly negligent or with willful or wanton misconduct towards Ed's care. *See Duke*, 172 N.E.3d at 1272-73 (finding summary judgment inappropriate where the defendant made "a mistake" that "played a 'big role'" in the case, which created a genuine issue of material fact over whether the actions constituted willful or wanton misconduct).

[24] The only reasonable conclusion reached from the designated evidence is that Ed received care in-line with that expected during an uncertain time—April 2020—while the world grappled with a global pandemic. Because there is no genuine issue of material fact for the factfinder to consider, we affirm summary judgment for Defendants. *See McGowen*, 152 N.E.3d at 660-62 (finding

summary judgment proper where the designated evidence was undisputed that the defendant did not act grossly negligent or commit willful or wanton misconduct).

## I. Carol Waived Any Argument that the COVID-19 Immunity Statute Is Unconstitutional

Carol also challenges for the first time on appeal the constitutionality of the COVID-19 immunity statute under Article 1, Section 12 of the Indiana Constitution. She argues the statute is unconstitutional because it retroactively strips "victims of medical malpractice of their accrued right to recover for their injuries as long as the care givers claim patients have possible Covid as an excuse for their neglect." Appellant's Br., pp. 13-14.

This claim is waived. Neither Carol's complaint nor any briefing before the trial court mentions this constitutional argument. *See Plank v. Cmty. Hosps. of Ind., Inc.*, 981 N.E.2d 49, 53 (Ind. 2013) (declaring that the "general rule is that failure to challenge the constitutionality of a statute at trial results in waiver of review on appeal"). Although Carol contended at oral argument that this court still possessed jurisdiction to hear an otherwise waived argument, she provides no compelling reason to do so. Indeed, the only authority she provides for this argument is a decision from Arizona, based on their constitutional anti-abrogation clause—a clause not present in Indiana's constitution. Appellant's Br., pp. 13-14 (citing *Roebuck v. Mayo Clinic*, 536 P.3d 289 (Ariz. Ct. App. 2023)). Thus, we find Carol's constitutional claims waived.

## Conclusion

There remains no genuine issue of material fact and Defendants are immune from civil liability as a matter of law. We therefore affirm the trial court and its entry of summary in favor of Defendants.

Mathias, J., and Tavitas, J., concur.

ATTORNEY FOR APPELLANT

David W. Stewart
Stewart Phelps Wood Injury Lawyers
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
ANONYMOUS DOCTOR 2 AND ANONYMOUS MEDICAL GROUP 2

Jason A. Scheele
Jordan S. Huttenlocker
Rothberg Logan & Warsco LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE
ANONYMOUS MEDICAL CENTER 2

Marilyn A. Young
Marley G. Hancock
Cassiday Schade, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
ANONYMOUS DOCTOR 3 AND ANONYMOUS MEDICAL GROUP 3

Peter H. Pogue
Julia A. Condict
Schultz & Pogue, LLP
Indianapolis, Indiana

Margaret M. Christensen
Moncerrat Z. Alvarez
Dentons Bingham Greenebaum LLP
Indianapolis, Indiana


ATTORNEY FOR APPELLEE
ANONYMOUS DOCTOR 1 AND ANONYMOUS MEDICAL GROUP 1

Edna M. Koch
Zeigler Cohen & Koch
Indianapolis, Indiana


ATTORNEY FOR APPELLEE
ANONYMOUS MEDICAL CENTER 1

Taylor E. Bonacorsi
Stoll Keenon Ogden PLLC
Indianapolis, Indiana


ATTORNEYS FOR AMICUS CURIAE
INDIANA STATE MEDICAL ASSOCIATION AND
AMERICAN MEDICAL ASSOCIATION

Libby Yin Goodknight
Alexandra Wilson Pantos
Krieg DeVault LLP
Indianapolis, Indiana