**Bren SIMON, as Personal Representative of the Estate of Melvin Simon; and Bren Simon, As Trustee of the Melvin Simon Family Enterprises Trust Agreement, Appellant–Defendant,**

v.

**Deborah J. SIMON, Simon Property Group, Inc., and Simon Property Group, L.P., a Delaware limited partnership, Appellees–Plaintiffs.**

No. 29A05–1012–ES–760.

Court of Appeals of Indiana.

Nov. 17, 2011.

William E. Wendling, Jr., Anne Hensley Poindexter, Campbell Kyle Proffitt LLP, Carmel, IN, Julia Blackwell Gelinas Maggie L. Smith, Frost Brown Todd LLC, Indianapolis, IN, Attorneys for Appellants.

Richard A. Smikle, Brian J. Paul, Ice Miller LLP, Indianapolis, IN, Jack G. Hittle, Church, Church, Hittle & Antrim, Noblesville, IN, Attorneys for Appellee Deborah J. Simon.

Wayne C. Turner, Michael R. Limrick, Bingham McHale, LLP, Indianapolis, IN, Attorneys for Appellee Simon Property Group, Inc.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Melvin Simon died in 2009, and Bren Simon, his surviving spouse, was named Personal Representative of the Estate of Melvin Simon ("the Estate") and Trustee of the Melvin Simon Family Enterprises Trust Agreement ("the Trust"). Bren brings this interlocutory appeal as Personal Representative and Trustee from the trial court's order denying her notice of objection in which she requested that the trial judge disqualify himself from a will and trust contest and a declaratory judgment action, both cases pending in the Hamilton Superior Court and which have been consolidated in this interlocutory appeal. The trial court also granted motions

by Deborah Simon, Melvin's daughter, to remove Bren as Personal Representative and Trustee. The court then appointed a Successor Personal Representative and Trustee, who is not participating in this appeal. We conclude that when Bren was removed as Personal Representative and Trustee she lost her authority to pursue this appeal in a representative capacity, and Bren was not a party in her individual capacity in the trial court. Accordingly, we hold that Bren lacks standing to maintain this appeal in either a representative capacity or an individual capacity. Thus, we are without jurisdiction to consider this appeal on the merits, and we dismiss.

## FACTS AND PROCEDURAL HISTORY

### Melvin Simon's Estate Plan

Melvin and Bren Simon were married in 1972. Melvin died in 2009. Prior to his death, most of Melvin's assets were held in the Trust, with Melvin and Bren as cotrustees. Melvin's original estate plan provided for the division of his assets into three equal parts: one-third would pass to Bren, one-third to a marital trust with Bren as the sole income beneficiary (with the remainder to pass upon her death to the four children), and one-third to a charitable lead annuity trust. In February of 2009, six months before Melvin's death, his estate plan was altered. Under the provisions of the new plan, Bren's inheritance increased while the children's inheritance decreased and essentially all charitable donations were eliminated.

Melvin died on September 16, 2009. Following his death, in January of 2010, Deborah Simon, Melvin's daughter from a prior marriage, filed a complaint to contest will against Bren as Personal Representative and a second complaint to contest trust against Bren as Trustee, cases that were later consolidated in the trial court, in which Deborah challenged the changes to Melvin's estate plan (collectively, "the Estate Dispute"). In her complaints, Deborah alleged that Melvin lacked the capacity to execute the 2009 changes to the estate plan and that the altered will and altered trust were "obtained through fraud, undue influence, duress, and/or other breaches." Appellant's App. at 114, 257. Additionally, in February of 2010 Deborah filed petitions seeking the removal of Bren from her fiduciary positions as Personal Representative and Trustee.

### The Declaratory Judgment Action

One of the Trust's principal assets is its ownership of partnership units in the Simon Property Group, LP ("SPGLP"). Simon Property Group, Inc. ("SPG") is the general partner of SPGLP, and SPG's chairman and CEO is David Simon, Melvin's son. Pursuant to the partnership agreement, the Trust has "the right ... to convert all or a portion of ... [the] Partnership Units into Shares [of the publicly traded SPG] or cash...." *Id.* at 325. However, the partnership units must be delivered to SPG free and clear of all "Lien[s]," a broadly defined term in the agreement, and SPG is not required to convert tendered partnership units into cash or shares when those units are subject to a lien. *Id.* at 285, 327–28.

On or about January 12, 2010, Bren, pursuant to the terms of the partnership agreement, but without having first consulted with a financial advisor, delivered an irrevocable written notice to SPG requesting that SPG convert all of the Trust's approximately 6.5 million SPGLP units—about half a billion dollars' worth—to cash or shares of SPG common stock.[1]

1. Bren's counsel acknowledged to the trial court that, had SPG remitted stock, Bren

SPG refused, citing the Estate Dispute as a possible encumbrance within the definition of a lien under the partnership agreement. On January 25, SPG filed a complaint for declaratory judgment against Bren, in which SPG sought a judicial declaration that the Estate Dispute qualified as a lien ("the Trust Dispute"). Bren filed a counterclaim against SPG for, among other things, breach of contract and breach of fiduciary duty.

### Proceedings Before the Trial Court

All of the lawsuits were filed in the Hamilton Superior Court before the Honorable William J. Hughes. On July 15 and 16, 2010, Judge Hughes conducted an evidentiary hearing on Deborah's motion in the Estate Dispute to remove Bren as Personal Representative and Trustee. Deborah's motion to remove Bren from her representative capacities was based on, among other things, Bren's request to convert the SPGLP partnership units to cash or shares without having first retained a financial advisor.

During closing argument, Bren's counsel admitted that Bren had distributed $14 million to herself as a "d[e m]inimus ... advance subject to reimbursement." Transcript at 478. Judge Hughes questioned Bren's actions:

> a trustee cannot give themselves [sic] money by loan or by advance from a trust in the State of Indiana without complying with [Indiana Code Section] 30–4–3–5[ [2] ] and ... that requires one of three things to occur. It requires Court approval. It requires notice to beneficiaries of intent to do it and either the beneficiaries all consent, or a beneficiary doesn't consent and a Court approves it after a hearing, or [there is] a specific provision in the trust agreement that permits it. I've read the trust agreement. I don't find the third one.... [A]nd I don't think there's evidence for either of the other two.
>
> \*    \*    \*
>
> [C]ase law ... indicates that a Court commits reversible error where there's a request to remove a trustee who has granted a loan or an advance to themselves [sic] without complying with the statutory requirements.... That's the case law in the State of Indiana. How do I get past that? ... How do I get past the 14 million dollars?

*Id.* at 479–81. At the conclusion of the hearing, Judge Hughes prohibited all trust distributions without prior court approval, and "none to be made by Bren to Bren" absent compliance with Indiana Code Section 30–4–5–3. *Id.* at 513. The court then took Deborah's motion under advisement.

---

would have promptly sold the stock for cash. *See* Transcript at 474.

2.  Indiana Code Section 30–4–3–5(a) states:

> If the duty of the trustee in the exercise of any power conflicts with the trustee's individual interest or the trustee's interest as trustee of another trust, the power may be exercised only under one (1) of the following circumstances:
>> (1) The trustee receives court authorization to exercise the power with notice to interested persons as the court may direct.

>> (2) The trustee gives notice of the proposed action in accordance with IC 30–2–14–16 and:
>> (A) the trustee receives the written authorization of all interested persons to the proposed action within the period specified in the notice of the proposed action; or
>> (B) a beneficiary objects to the proposed action within the period specified in the notice of the proposed action, but the trustee receives court authorization to exercise the power.
>> (3) The exercise of the power is specifically authorized by the terms of the trust.

### The October 27, 2010, Incident

On October 27, 2010, while on vacation in North Carolina, Judge Hughes was charged with driving while impaired. He voluntarily reported the incident to the Indiana Commission on Judicial Qualifications ("the Commission") on October 28, and, on November 1, he issued a press release announcing the arrest. He disqualified himself from fourteen criminal cases with charges relating to the sale, use, abuse, or transportation of alcohol.

On November 8, 2010, Judge Hughes retained two attorneys, James Bell and Kevin McGoff, from the law firm of Bingham McHale in Indianapolis to represent him before the Commission. Bingham McHale represents SPG, but prior to retaining the two attorneys Judge Hughes received assurances from the firm that a "Chinese Wall"[3] would be erected to isolate the representation of Judge Hughes from all cases in which Bingham McHale appeared before the Judge. Appellant's App. at 72.

The next day, Judge Hughes initiated a telephone conference with lead counsel for both Deborah and Bren. During that call, Judge Hughes disclosed the events of October 27 and that he had retained attorneys from Bingham McHale. Judge Hughes also informed the parties that he would issue a written disclosure notice, in which he would establish a specific procedure by which counsel could object to him continuing to preside over the cases. Shortly after that conference, Judge Hughes issued the disclosure notice, which stated in relevant part:

> [Judge Hughes] is not required by the provisions of [Rule] 2.11 of the Code of Judicial Conduct to disqualify herein be-

cause he bears no bias or prejudice for or against the firm of Bingham McHale, any party they [sic] represent, any opposing counsel herein, or any opposing party herein, because of Mr. McGoff's and Mr. Bell's representation of [Judge Hughes] in said unrelated matter. The parties may confer and specifically agree to [Judge Hughes] continuing as presiding Judge herein in which case no further filing will be required, or any party or counsel herein may file notice of objection to the continuation of [Judge Hughes] as presiding Judge herein on or before December 10, 2010. In the event an objection is filed to the continuation of [Judge Hughes] as presiding Judge because of the circumstances disclosed in this notice and in the event any further proceedings on said objection are required, said proceedings shall be assigned for resolution to Magistrate David Najjar.

*Id.* at 633.

### The Two December 15 Orders

On November 22, 2010, Judge Hughes voluntarily terminated Bingham McHale's representation. Later that same day, Bren filed a notice of objection to Judge Hughes presiding over the two cases. Specifically, Bren alleged that, because Judge Hughes had retained attorneys from Bingham McHale, Judicial Conduct Rule 2.11(A) required him to disqualify himself from both the Estate Dispute and the Trust Dispute. One week later, on December 1, Judge Hughes issued an order overruling Bren's objection. In his written order, Judge Hughes stated that he would certify the order for interlocutory appeal if so requested. Bren filed a

---

3. "The term 'Chinese Wall' refers to any set of physical and procedural barriers intended to prevent one member of an organization, such as [an attorney in] a law firm, from being exposed to information relating to a matter currently or formerly handled by" his or her colleagues. *Roberts v. Hutchins,* 572 So.2d 1231, 1234 n. 3 (Ala.1990).

request that the order be certified on December 8, and on December 15 the trial court granted Bren's request.

But on December 15, the trial court also granted Deborah's February 2010 motion to remove Bren as Personal Representative and Trustee. The court stated that:

Deborah Simon has carried her burden of proof upon her Petition to Remove Bren Simon as Personal Representative.... Deborah Simon has carried her burden of proof upon her Petition to Remove Bren Simon as Trustee.... The record herein is replete with examples of conduct by Bren Simon justifying her removal in both capacities. The Court will not burden this order with the myriad of details; however, it will be helpful for the Court to detail, by way of illustration, some of the more significant grounds. In this regard, the Court finds that the removal of Bren Simon as trustee of [the Trust] is required because Bren Simon in her capacity as Trustee distributed to Bren Simon in her personal capacity approximately $13,000,000 without notice to or consent from the other beneficiaries of the Trust. Upon discovery of this distribution and the subsequent litigation herein, Bren Simon as Trustee then attempted to re-characterize this distribution as a loan unsupported by such significant terms as interest rate and repayment schedule. Even though the Fourth Restated Family Enterprises Trust Agreement contains a generic provision permitting the Interim Trustee to engage in self-dealing, under Indiana Law such provisions do not permit the specific activity by a trustee of loaning trust corpus to oneself. *Davis v. Davis*, 889 N.E.2d 374, 382 (Ind.Ct.App.2008). The Court finds that this conduct related to the Trust is inextricably related to her fitness to continue to serve as personal representative of the Estate. While

Bren Simon was named as the Personal Representative in the will of Melvin Simon probated herein, such designation is not binding on this Court. Due deference should be given to the final wishes of the testator, but[,] in the final analysis, the Personal Representative must satisfy the requirements of the Court for the proper, timely[,] and efficient administration of an estate. Those requirements include, in any [e]state matter but certainly in an [e]state of this magnitude, the following: a.) making proper litigation decisions, such as the retention of unconflicted counsel; b.) retaining appropriate professionals to advise on the conversion of in excess of $600,000,000 in stock prior to attempting that conversion; and c.) paying counsel for the Estate herein in excess of $3,000,000 without prior Court approval in a supervised estate.... For the[se] reasons and others, Deborah Simon has clearly and convincingly met her burden on the pending petitions.

*Id.* at 790–91. After removing Bren as Personal Representative and Trustee, in the same order the court appointed former Indiana Supreme Court Justice Theodore R. Boehm as the Successor Personal Representative and Trustee "without delay." *Id.* at 792. Bren did not appeal from or receive a stay of that order.

Subsequently, Bren filed her Appellant's Case Summaries and asked this court to accept jurisdiction of her interlocutory appeal from Judge Hughes' refusal to disqualify himself. Bren brought her appeal in her capacity as "Personal Representative" and "Trustee." Appellant's Case Summaries at 1. However, Bren acknowledged that, "[o]n December 15, 2010, the same date [it] certified [the Order] for interlocutory appeal, the trial court removed Bren Simon" as Personal Representative and Trustee. *Id.* Deborah and SPG

objected to the request for interlocutory review on the grounds that Bren no longer represented the Estate or the Trust and, therefore, that she lacked standing to pursue her appeal of the trial court's order. Our motions panel granted Bren's request that we accept jurisdiction, and this appeal ensued.

## DISCUSSION AND DECISION

██ Bren contends that she has standing because our motions panel accepted jurisdiction of this discretionary interlocutory appeal under Appellate Rule 14(B), but it is well established that a writing panel may reconsider a ruling by the motions panel. *Miller v. Hague Ins. Agency, Inc.,* 871 N.E.2d 406, 407 (Ind.Ct. App.2007). While we are reluctant to overrule orders decided by the motions panel, this court has inherent authority to reconsider any decision while an appeal remains *in fieri. Id.* This is especially true where, as here, after considering a more complete record than was available to the motions panel, and the appellate briefs, we have determined there is clear authority establishing that the motions panel erred. *See Cincinnati Ins. Co. v. Young,* 852 N.E.2d 8, 12 (Ind.Ct.App.2006). We conclude as a matter of law that the trial court order that removed Bren as Personal Representative and Trustee both terminated her representative capacity and her authority to litigate any further on behalf of the Estate and the Trust. That authority was then vested exclusively in her successor.

██ A would-be party must first have standing to seek relief from the courts. Standing is defined as having a "sufficient stake in an otherwise justiciable controversy." *Ind. Civil Rights Comm'n v. Indianapolis Newspapers, Inc.,* 716 N.E.2d 943, 945 (Ind.1999). Like the real-party-in-interest requirement, the point of the standing requirement is to insure that the party before the court has a substantive right to enforce the claim that is being made in the litigation. *Pence v. State,* 652 N.E.2d 486, 487 (Ind.1995). Standing is "a significant restraint on the ability of Indiana courts to act, as it denies the courts any jurisdiction absent an actual injured party participating in the case." *Id.* at 488. Moreover:

> The standing requirement mandates that courts act in real cases, and eschew action when called upon to engage only in abstract speculation. An actual dispute involving those harmed is what confers jurisdiction upon the judiciary: For the disposition of cases and controversies, the Court requires adverse parties before it. Standing focuses generally upon the question whether the complaining party is the proper person to invoke the Court's power. However, more fundamentally, standing is a restraint upon this Court's exercise of its jurisdiction in that *we cannot proceed where there is no demonstrable injury to the complainant before us.*

*Id.* (first emphasis added; quotation omitted). In order to have standing, the challenging party must show adequate injury or the immediate danger of sustaining some injury. *Ind. Civil Rights Comm'n,* 716 N.E.2d at 945 (citing *Pence,* 652 N.E.2d at 488).

██ On December 15, 2010, the trial court removed Bren as Personal Representative and Trustee, and, thus, Bren cannot maintain this appeal in a representative capacity. In *Weiland v. Scheuch,* 123 Ind.App. 421, 422–23, 111 N.E.2d 664, 664 (1953), this court considered an appeal from a judgment of the Marion County Probate Court that removed an executrix and revoked her letters testamentary. The former executrix attempted to appeal her

removal in her representative capacity. As we explained:

> Strict application of the law pertaining to appellate procedure and our rules governing the briefing of cases on appeal leaves us little or nothing to decide. *The appellant has appealed from the judgment herein in her representative capacity.* As was said by this court in *Union, etc., Trust Co. v. Eddingfield,* 1922, 78 Ind.App. 286, 134 N.E. 497, 498: "The order of revocation was self-executing. It took effect immediately. An appeal does not operate to suspend the effect of such an order. The order completely stripped the trust company of its authority, and took away its representative capacity. Thereby its prior connection with the estate was completely severed." The court then quotes from *Taylor v. Savage,* 1843, 1 How. 282, 42 U.S. 282, 11 L.Ed. 132, wherein the Supreme Court of the United States said that the personal representative of a deceased person, who has been removed from his office of trust, has no control over the decedent's estate "nor any right to interfere with it by prosecuting an appeal" from the removal order. *Thus it seems settled that the present appellant was personally aggrieved by the judgment in question and she should have appealed as an individual and not in a capacity she no longer occupies.*

*Id.* (emphases added).

In other words, once a personal representative has been removed, the former representative lacks authority to prosecute an appeal of the removal order. And if the former representative may not appeal the removal order in her representative capacity, then it follows that she cannot appeal a collateral order such as the order here in which the trial judge refused to disqualify himself. The removal order took effect immediately, terminated Bren's representative capacity, and severed her fiduciary relationship with the Estate and the Trust. *See id.*

As our supreme court observed in *Pence,* standing requires that an actual, injured party participate in this case. 652 N.E.2d at 488. Bren purports to represent the Estate and the Trust. But, again, insofar as the trial court's order might affect the Estate or the Trust, Bren lacks the representative capacity to raise such a claim on appeal. The trial court's removal order was self-executing and was not stayed. The Estate and the Trust could have appealed the trial judge's order in which he overruled the objection that he disqualify himself, but the Successor Personal Representative and Trustee apparently chose not to prosecute such an appeal. Accordingly, the Estate and the Trust—the parties Bren asserts are injured by the trial judge's refusal to disqualify himself—are not parties to this appeal.

In her reply brief, Bren responds that she is a beneficiary of the Estate and the Trust and, therefore, that she has standing to appeal as an aggrieved party. Under the Probate Code, "[a]ny person considering himself aggrieved by any decision of a court having probate jurisdiction in proceedings under this article may prosecute an appeal to the court having jurisdiction of such appeal." Ind.Code § 29–1–1–22. Likewise, under the Trust Code, "[a]ny person considering himself aggrieved by any decision of a court having jurisdiction in proceedings under this article may prosecute an appeal to the court having jurisdiction of such an appeal." I.C. § 30–4–6–11(a).

But to prosecute an appeal, the person considering herself aggrieved must have first been a party before the trial

court. Appellate Rule 17(A) provides that "[a] party of record in the trial court ... shall be a party on appeal." The converse is also true: a person who is not a party of record in the trial court cannot become a party for the first time on appeal. *See Treacy v. State*, 953 N.E.2d 634 (Ind.Ct. App.2011), *pet. for trans. filed.* That is, "Rule 17 ... limits the class of parties on appeal to parties of record in the trial court." *Id.*

■■■ After her removal as Personal Representative and Trustee, Bren did not move to intervene in her individual capacity in the trial court. *See* Ind. Trial Rule 24. "[T]here are ... no appellate rules providing for intervention in an appeal." *Treacy*, 953 N.E.2d 634. If Bren believes she is an aggrieved person under either Indiana Code Section 29–1–1–22 or Section 30–4–6–11(a), she may make that argument to the trial court in the first instance in a motion to intervene. *See, e.g., Eddington v. Eddington*, 213 Ind. 347, 348, 12 N.E.2d 758, 759 (1938) (noting that the trial court permitted a statutory beneficiary to intervene as an interested party because she considered herself aggrieved by an order of the court). The fact that Bren was Personal Representative and Trustee at the moment she filed her request for certification of an interlocutory appeal in the trial court does not mean that she retained her standing to maintain this appeal after she lost her fiduciary status. And, Bren, who did not bring this appeal in her individual capacity, cannot establish standing as an aggrieved party for the first time on appeal.

■■■ Still, the dissent contends that "Bren has standing to bring this appeal as she is aggrieved by Judge Hughes' refusal to recuse himself." Op. at 991. But, again, while Bren may be aggrieved, that fact is insufficient in itself to confer standing on her where, as here, she no longer occupies a fiduciary capacity and has not intervened in her individual capacity. Standing is a necessary predicate and a threshold issue that preempts the question of whether the trial judge should have disqualified himself. Further, standing is not immutable. It is well established that a person with standing can lose it. *See, e.g., United States Fid. & Guar. Co. v. Griffin*, 541 N.E.2d 553, 555–56 (Ind.Ct.App.1989) (holding that shareholders had failed to maintain their status as shareholders by selling their shares after they had filed their complaint and, therefore, had lost standing to maintain a derivative suit). Thus, we respectfully disagree with the dissent that the December 1 order and Bren's motion to certify that decision on December 8 "freezes the legal situation in time." Op. at 990. Standing is not a mere "operating premise." *Id.* It is a jurisdictional prerequisite.

And we cannot agree on these facts that "a trial court could effectively shield itself from judicial scrutiny by removing or dismissing a party seeking the trial court's recusal." *Id.* at 991. Here, the trial court was not immune from appellate review. First, if Bren had been granted leave to intervene in the trial court as an aggrieved party, she would have had standing to prosecute this appeal. Second, the Successor Personal Representative and Trustee had standing to appeal. We can discern no basis for the proposition that Bren's fiduciary status was divisible, and that, while the Successor Personal Representative and Trustee had replaced her and assumed her fiduciary duties, she nevertheless retained authority to litigate in her representative capacity as Personal Representative and Trustee.

In sum, we hold that Bren lacks standing to pursue this appeal. She is no longer the Personal Representative or Trustee and, therefore, she cannot litigate on be-

half of the Estate or the Trust in a capacity she no longer occupies. *See Weiland,* 111 N.E.2d at 664. And Bren has not intervened in her individual capacity in the trial court. As such, because she is not a party in the trial court, she cannot be an aggrieved party on appeal. Thus, we must dismiss this appeal for lack of jurisdiction.

Dismissed.

MAY, J., concurs.

RILEY, J., dissents with separate opinion.

RILEY, Judge, dissenting.

I respectfully disagree from the majority's decision to dismiss Bren's interlocutory appeal for lack of standing. The majority bases its conclusion on Judge Hughes' December 15, 2010 Order that removed Bren as Personal Representative and Trustee and which, according to the majority, consequently terminated her representative capacity and her authority to litigate any further on behalf of the Estate and the Trust. In support of its analysis, the majority relies on *Weiland v. Scheuch,* 123 Ind.App. 421, 111 N.E.2d 664, 664 (1953), in which we held that once a personal representative has been removed, he or she can no longer interfere in the lawsuit in his or her representative capacity, but has to intervene in an individual capacity. Because Bren failed to intervene in her individual capacity, the majority opined that she lacked standing to pursue this appeal. The majority's operating premise is wrong.

Unlike *Weiland,* where the former executrix attempted to appeal her removal in her representative capacity, Bren is *NOT* appealing Judge Hughes' December 15, 2010 removal Order, rather she is appealing Judge Hughes' December 1, 2010 Order in which he refused to recuse himself. To that end, she filed her motion to certify that decision for interlocutory appeal on December 8, 2010, which was granted by Judge Hughes on December 15 prior to issuing his decision of the same date to remove Bren as Personal Representative and Trustee. In its opinion, the majority conflates the December 1 Order and the December 15 removal Order—both Orders cover different issues and were issued on different dates. By focusing on the December 15 removal Order—which Bren did not appeal—the majority concludes that Bren lacks standing to "prosecute an appeal of the removal order." *See* Op. p. 988. The majority then extrapolates this conclusion retroactively to the December 1 Order by opining that "if the former representative may not appeal the removal order in her representative capacity, then it follows that she cannot appeal a collateral order such as the order here in which the trial judge refused to disqualify himself." *See* Op. p. 988.

Judge Hughes' December 1 Order refusing to recuse himself and Bren's subsequent motion to certify this decision for interlocutory appeal on December 8, 2010 freezes the legal situation in time. As noted from the record, Judge Hughes' grant of Bren's motion for an interlocutory appeal was already announced in his December 1 Order and was a mere formality when it took place on December 15, 2010—any decisions made or actions taken after the certification of the interlocutory appeal by Judge Hughes are superfluous to my analysis. Because Bren was granted an interlocutory appeal of her claim, Judge Hughes' impartiality was unresolved and remained at issue. All decisions issued by Judge Hughes since Bren raised and pursued her argument have been tainted with possible illegality, especially Judge Hughes' December 15 decision which removed Bren as Trustee and Personal Representative: if Judge Hughes lost his ap-

pearance of impartiality, all his decisions since December 8, 2010 are invalid; if, on the other hand, Judge Hughes has remained impartial, Judge Hughes' order to remove Bren as Trustee and Personal Representative cannot be found defective in that respect.

Based on the facts before us, I conclude that Bren has standing to bring this appeal as she is aggrieved by Judge Hughes refusal to recuse himself. Pursuant to Indiana Code section 30–4–6–11(a) of the Trust Code, "[a]ny person considering himself aggrieved by any decision of a court having jurisdiction in proceedings under this article may prosecute an appeal to the court having jurisdiction of such an appeal." Likewise, Indiana Code section 29–1–1–22 of the Probate Code provides that "[a]ny person considering himself aggrieved by any decision of a court having probate jurisdiction in proceedings under this article may prosecute an appeal to the court having jurisdiction of such appeal." In the vintage decision of *McFarland v. Pierce*, 151 Ind. 546, 45 N.E. 706, 706–07 (1897), our supreme court—interpreting a statute conferring the right to appeal on any 'person aggrieved' by the appointment of a receiver—constructed what is still today considered the seminal definition of the term 'aggrieved.' The *McFarland* court defined it as

> a substantial grievance, a denial of some personal or property right, or the imposition upon a party of a burden or obligation. To be aggrieved is to have a legal right, the infringement of which by the decree complained of will cause pecuniary injury. The appellant must have a legal interest which will be enlarged or diminished by the result of the appeal.

*See also Jaqua v. Reinhard,* 99 Ind.App. 261, 190 N.E. 887, 890 (1934) (citing *McFarland* when interpreting 'aggrieved'

under the Probate Code). More recently, in *In re Estate of Eguia,* 917 N.E.2d 166, 169 (Ind.Ct.App.2009), we held that to be 'aggrieved,' the probate court's judgment must be adverse to the person's legal interests.

At the center of the dispute is the validity of the revised will, which will result in Bren either gaining or losing a considerable portion of her deceased husband's estate. When the presiding Judge in this battle hired the law firm who is also representing one of Bren's opposing parties in the Trust Dispute to defend his interests before the Indiana Judicial Qualifications Commission, it is understandable that Bren questioned the Judge's impartiality, and pursued Judge Hughes' refusal to recuse himself on appeal.

The majority's decision is a disservice to justice. Accepting the majority's premise that Judge Hughes' decision to remove Bren as Trustee and Personal Representative, standing alone, results in Bren losing standing in the current appeal, which was initiated prior to Judge Hughes' removal Order, a trial court could effectively shield itself from judicial scrutiny by removing or dismissing a party seeking the trial court's recusal. In reaching this conclusion, the majority clearly affirmed Appellees' argument which was raised as a red herring in their brief in order to obscure the pertinent issue before us. Unfortunately, the majority took the bait.