## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 18 2016, 7:56 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Laura L. Rybicki
Dugan, Repay & Rybicki, P.C.
St. John, Indiana

ATTORNEY FOR APPELLEE

Adam J. Sedia
Rubino, Ruman, Crosmer & Polen
Dyer, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Guardianship of A.P., Adult,

Louisa Jurich,

*Appellant-Petitioner,*

v.

Louis Picicco,

*Appellee-Respondent.*

October 18, 2016

Court of Appeals Case No. 45A05-1602-GU-300

Appeal from the Lake Superior Court

The Honorable William E. Davis, Judge

Trial Court Cause No. 45D01-1012-GU-63

**Najam, Judge.**

## Statement of the Case

Louisa Jurich appeals from the trial court's order accepting Louis Picicco's amended verified account of administration of the guardianship of A.P. ("amended account") and denying Jurich's petition to remove Picicco as guardian of A.P. Jurich presents two issues for our review:

    1.    Whether the trial court erred when it accepted Picicco's amended account.

    2.    Whether the trial court erred when it denied Jurich's petition to remove the guardian without first conducting a hearing.

We affirm.

## Facts and Procedural History

A.P., a widow, was born in 1926 and resides in St. John with her adult daughter Joanne Hubbell and one other person. A.P. has four children, including Hubbell, Jurich, and Picicco. In December 2010, Jurich filed a verified petition for appointment of temporary and permanent guardian of the person and estate of A.P. alleging that A.P. was "exhibiting mental deficiencies indicative of dementia and/or Alzheimer's Disease" and was incapable of taking care of her person and her finances. Appellant's App. at 15. Following a hearing on that petition, the trial court appointed Picicco guardian over A.P.'s person and estate. The trial court's order on petition for letters of guardianship provided in relevant part as follows:

[A.P.] is an adult who is incapable of handing her financial affairs. She has poor memory but she appears to retain the ability to care for her person, to make certain decisions about her personal care and to decide with whom she communicates and at what times. [A.P.] admits that she doesn't understand what property she owns or what is happening with her money and she requests that if a guardian is appointed over her, then she wishes her son[, Picicco,] to be appointed as her guardian. The Court finds that her son[, Picicco,] should be appointed [A.P.]'s guardian.

[A.P.] and her late husband had made arrangements to live out their years in a home with their daughter [Hubbell] although in separate quarters with separate entrances. That is the situation under which [A.P.] resides today and it should remain that way unless and until circumstances materially change. [A.P.] and her late husband appear to have paid a substantial amount of money towards the purchase of that home in exchange for the convenience of having their daughter [Hubbell] assist them to an undetermined extent. [Hubbell] has, in fact, offered some assistance since the middle of 2009. . . .

* * *

A good deal of animosity, at least among [A.P.]'s children, has been created by certain expenditures of [A.P.]'s money that were made under color of power of attorney or otherwise. [A.P.] herself is worried about what is being done with her finances. . . .

* * *

IT IS THEREFOR[E] ORDERED as follows

1.    [A.P.] is an adult in need of a guardian of her estate and a guardian with limited powers over her person.

2.    Her son Louis Picicco is hereby appointed the guardian over her estate and with limited powers over her person. The Clerk shall issue letters of Guardianship to him upon his qualification by taking oath [sic]. The requirement of a bond will be determined upon receipt of an inventory.

3.    The Guardian shall prepare and file an inventory of [A.P.]'s assets and a description of her income within 60 days of the date of this Order. . . .

4.    Within 90 days of the date of this Order, the Guardian shall, to the extent possible, reconstruct and file with this court an accounting of [A.P.]'s income and expenditures for the period July 1, 2010 through December 31, 2010. . . .

* * *

6.    The Guardian shall seek Court approval before [A.P.]'s assets are used for making gifts in excess of $50 to any one individual and shall only make such gifts after determining that [A.P.] knowingly wanted to make the gift.

7.    [A.P.] shall have unrestricted visitation rights with whomever she wishes to visit.

* * *

9.    After the filing of the accounting, the Guardian shall propose a periodic allowance to be given to [A.P.] so that she may have petty cash to spend as she sees fit.

* * *

11.    The Clerk is Directed to issue Letters of Guardianship to Louis Picicco with unlimited powers over the Estate of

[A.P.] and with the following limitations on the powers over the person of [A.P.]:

[A.P.] retains the right to visit with whomever she wishes including going outside the house as long as it is not for an overnight.

Each of [A.P.]'s children shall have unimpeded visitation rights with [A.P.] as long as [A.P.] desires to see them.

[A.P.] shall retain the right to decide what she eats, what she wears and what she does with her time.

The Guardian is directed and authorized to take [A.P.] for at least semi-annual physical and mental check-ups, with or without [A.P.]'s cooperation.

*Id.* at 29-31.

On March 31, 2011, Picicco filed an inventory of A.P.'s assets, and on August 15, he filed an accounting and a "Petition to Approve Budget and Expenditures." *Id.* at 40. In the Petition, Picicco stated that A.P.'s monthly income totaled $1297, and he asked the trial court to approve the following monthly expenses: $213.88 for supplemental insurance; $145.45 for one-half of the water/sewer bill; $117.55 for one-half of the Comcast cable/telephone bill; $157.74 for one-half of the gas/electric bill;[1] $107.73 for A.P.'s share of the real estate taxes; $450 for "food, household supplies"; $100 for gifts to "family

---

[1] In the petition, Picicco states that the "actual living space occupied by [A.P.] is approximately 38% of the entire square footage of the residence." Appellant's App. at 40.

members, birthdays, anniversaries, holidays"; and $100 for "miscellaneous." *Id.* at 41. In an order dated September 21, the trial court approved the budget. However, after "interested parties" met to discuss said budget, Picicco moved the trial court to vacate the order, which it did. *Id.* at 45.

On October 9, 2013, Picicco filed his First Current Account of A.P.'s assets covering the period from January 12, 2011, to May 31, 2013. In that filing, Picicco included a list of A.P.'s assets, including her income from interest income and Social Security benefits, and an itemized list of "Disbursements." *Id.* at 48. Picicco did not substantiate the disbursements with copies of receipts.

On December 10, Jurich filed her Objections to Guardian's First Current Account in which she alleged the following: Picicco omitted Social Security benefits from January 1, 2011, through March 30, 2011; the Disbursements were "excessive" including, for instance, an average of $570 per month spent on food and groceries, "which is twice the average cost of food" estimated by the USDA for an average woman over seventy-one years of age; A.P.'s share of the utilities is not commensurate with her usage of the utilities; and Picicco failed to substantiate the disbursements with receipts as required by local rule. *Id.* at 57.

On January 2, 2014, Picicco filed the amended account in an attempt to address some of Jurich's objections. Again, Picicco did not submit copies of receipts to substantiate the listed disbursements. Instead, Picicco submitted an "Affidavit Regarding Receipts" in which he stated that "he has receipts available with respect to all disbursements contained in his accounting." *Id.* at 75. On

February 11, Jurich filed her Objections to Guardian's First Current Account—Amended alleging in relevant part that: the trial court should require Picicco "to produce records and receipts confirming the actual amount of income received and disbursements made" during the period of the accounting; the stated amount of Social Security benefits does not comport with the total amount A.P. should have received for that period; the disbursements for food and groceries still far exceeds that required for A.P.'s personal consumption; and A.P.'s share of utilities does not comport with her usage of those utilities. Also on February 11, Jurich filed a petition to remove Picicco as guardian of A.P.

[8]     On April 29, Picicco filed a response to Jurich's objections to the amended account. In his response, Picicco stated that, in appointing him guardian over A.P., the trial court gave him "limited powers over the Ward's estate." *Id.* at 96. In particular, Picicco stated that "the Court's order indicates that the Ward was to be allowed certain freedoms in the use of her assets and that the Guardian was to comply with the Ward's desires in some circumstances as to the use of her assets." *Id.* Picicco also stated as follows:

> 3. All receipts for all grocery/household/toiletry item expenditures have been provided to counsel for Louisa Jurich. 1) That an actual total of the grocery/household/toiletry item expenditures for the time period of the accounting averages to exactly $480.24 per month. This is consistent with the costs of these items utilized by and desired by the Ward, is not an excessive amount and comports with this Court's original order to allow the Ward liberal use of her assets. This also includes costs for the Ward's contributions to holiday meals as desired by

the Ward for her family including her five children and their families. Contrary to the objection of Ms. Jurich, these expenditures are appropriate, comply with the Court's original appointment order and are consistent with the desires of the Ward. 2) In addition, although the objecting party claims that she observed insufficient food present in the Ward's home, she does not report to the Court that during the entire year 2013, she only visited the Ward on 10 occasions and only made one phone call to the Ward. Further, the Ward's daughter who lives in the home with the Ward, handles the majority of the cooking and meal preparation for the Ward, as such, many times the food supplies are in the second kitchen of the home which is not visited by Ms. Jurich. 3) The Guardian has produced all medical records of the Ward to counsel for Ms. Jurich. In the one report where the Ward was noted as malnourished, the health professional only prescribes one can of Ensure as a treatment and the lab results from the blood taken on the day of the exam showed that the Ward's levels in all areas tested were normal. See Exhibit A, attached hereto. In addition, in the Ward's next examination, which occurred approximately one month later, the Ward was noted as being well nourished. See Exhibit "B" attached hereto.

4. In the residence of the Ward, two other individuals reside in a larger portion of the house. The Ward's living area has a full household of appliances and space such as a full kitchen, bathroom, laundry room, living area and bedroom. The Guardian has observed the Ward's use of electricity and water in her living area and due to the excessive nature of her use, has determined to pay one-half of the entire household water and electric bills. The Guardian has discretion to make this determination and has made the calculation based on his informed observations. The Guardian is present with the Ward weekly and has ample access to view her habits. As to the Comcast bill, the Guardian only pays one half of the cost of the cable and phone and pays nothing toward the internet costs. The September 2011 through May 2013 bills for utility services have

been produced and provided to counsel for Ms. Jurich. Further, the Guardian pays 19.61% of the real estate taxes owed on the residence as that represents the square footage occupied by the Ward. The real estate tax statements have been produced to counsel for Ms. Jurich.

* * *

8. Finally, as to the accounting, Ms. Jurich takes issue with the purchase of fast food by the Ward for her companions on a few occasions. The Ward's daughter Rose often takes her mother shopping and running errands, spending the entire day with Ward meeting the Ward's needs. The Ward is adamant on some occasions that since the daughter takes her time and resources to assist her mother, the Ward wants to purchase lunch for the daughter. As the Court desired the Guardian to allow the Ward freedom in these types of expenditures and since the meals purchased were inexpensive, the Guardian determined these expenses were permissible. There are only a few instances where this took place and it is not a common occurrence for the Ward to purchase lunch out at a restaurant for her children. As to the ATM withdrawals, on any entry where the entire amount of the withdrawal was not spent entirely, the excess funds were retained by Ward. There are entries such as 5/12/12 where the amount spent exceeds the amount withdrawn from the ATM thus additional funds held by the Ward were used to supplement the withdrawal. Overall, the accounting shows an accurate depiction of the expenditures and income of the Ward, all receipts for the expenditures as well as bank statements and bill statements have been provided to the counsel for the objecting party and there is not any evidence that the Guardian misused or misappropriated any funds. As such, the accounting is proper and should be approved as amended.

*Id.* at 97-99 (emphases added).

On May 20, Jurich filed a reply to Picicco's responses to her objections. Jurich alleged in relevant part that Picicco had mischaracterized the trial court's order with respect to his obligation to manage A.P.'s finances. In particular, contrary to Picicco's averment that the trial court had ordered him "to allow the Ward liberal use of her assets," Jurich pointed out that Picicco had "unlimited powers over the estate" of A.P. and had limited powers only over A.P.'s person. *Id.* at 170. And, while Picicco was allowed to "propose a periodic allowance to be given to [A.P.] so that she may have petty cash to spend as she sees fit," there is no evidence that Picicco ever established such an allowance. *Id.* Thus, Jurich alleged, Picicco was not complying with the trial court's order when he permitted A.P. to spend her own money freely on things like personal items and meals for other people. In particular, Jurich stated that,

> [b]ased upon the items purchased (as determined by examining receipts provided by Guardian in support of his Accounting), it is apparent that [A.P.]'s assets are being used to provide groceries and other items for individuals other than herself. The Respondent has compiled a report identifying of some of the items most frequently purchased. (Said Report is attached hereto, and incorporated herein by reference, as demonstrative Exhibit "C.") The items purchased exceed what could reasonably be consumed by [A.P.]. As one example, in a one-month period of time (June of 2011), 14 loaves of bread, 32 gallons of water, 41 pounds of bananas, and 6 gallons of orange juice were purchased. In some instances, the same items are being purchased on a daily basis. Additionally, there are a number of entries for items that were obviously purchased for someone other than [A.P.]. For example, the following items were purchased (sometimes repeatedly) over the course of the accounting period: feminine sanitary pads, dog food (although

[A.P.] does not own a dog), Blast deodorant for men, Degree deodorant for men, liquid makeup, Monster Energy Drinks, Aleve (which contradicts the Doctor's Report provided by the Guardian which states that [A.P.] is currently taking "aspirin"), reading glasses ([A.P.] wears prescription glasses) and Lee Rider Jeans. Other items that were purchased, which the Respondent contends would not be within [A.P.]'s customary diet, include Flaming Hot Cheetos, salsa, Spaghettios, Lunchables, Danimal Yogurt, soy milk, almond milk, candy bars, cheese sticks, Pringles, Soda Pop, peanut butter, Pillsbury Toaster Streudel, Doritos, sour cream, frozen dinners, chocolate drinks, carryout chicken wings, Spanish Rice, cheesy brats, oysters, coconuts, bottles of wine, cheese in a can, picante sauce, Hot Pockets, Tostitos con queso, Armour Eckridge Sausage, Snapple, Gushers, and cakes for birthdays. (True and accurate copies of the receipts provided by the Guardian and showing these questionable expenditures are attached hereto, and incorporated herein by reference, as group Exhibit "D.")

*Id.* at 154-55.[2]

[10] On March 27, 2014, the trial court held a hearing on Jurich's objections to Picicco's amended account.[3] Jurich attempted to present testimony, but the trial court refused to let her testify, and neither party presented evidence. That same day, the trial court issued an order stating that it was allowing "the Guardian to address the second Set of objections in writing" and that it would

---

[2] Jurich also addressed the alleged disproportionate share of the utilities being paid on behalf of A.P. and other concerns.

[3] The trial court stated that it would hold an evidentiary hearing on Jurich's petition to remove the guardian at a later date.

"then rule on the objections without further briefing or oral argument." *Id.* at 91. On April 28, Jurich filed a motion to reconsider the March 27 order and requested an evidentiary hearing on Picicco's amended account and Jurich's objections thereto. On April 29, Picicco filed his response to Jurich's objections. On May 1, the trial court denied Jurich's request for an evidentiary hearing, but permitted Jurich twenty days to file a reply to Picicco's April 29 response to her objections. And the court stated that it would then "rule without further oral arguments." *Id.* at 150. On May 20, Jurich filed her reply to Picicco's response to her objections.

[11]    On January 7, 2016, the trial court issued an order stating as follows:

> The Court has reviewed the Personal Representative's Current Account and 1st Amended Current Account and Mrs. Jurich's objections.
>
> The Court now accepts the Current account as amended. Further the Court directs that the other tenants in the home of the Ward need to pay a reasonable rent to the Guardianship estate which would include their reasonable share of utilities, maintenance, and other miscellaneous expenses on a monthly basis. Since the residence is owned by the Ward [sic]. If the physical or mental condition of the Protected Person has deteriorated since the opening of the guardianship someone should file a Petition for modification of the Court's order.

* * *

The Petition to remove the Guardian is denied.[4]

*Id.* at 14.

[12] On February 5, Jurich filed with the trial court a motion for certification of interlocutory order for appeal, but she also filed with this court a notice of appeal stating in relevant part that she was appealing from a final judgment. Under Indiana Code Section 29-3-9-6(f), Picicco's amended account "may be reviewed by the court at any subsequent time and does not become final until an account in final settlement is approved by the court[.]" Thus, the trial court's order approving the amended account was, by statute, an interlocutory order. And, because the trial court denied Jurich's petition to remove the guardian, Picicco's appointment remains subject to the trial court's supervision until the guardian has been finally discharged. Accordingly, the trial court's order approving Picicco's amended account and denying Jurich's petition to remove the guardian was not a final judgment, but an interlocutory order, as it did not dispose of all issues as to all parties thereby ending the case. *Georgos v. Jackson*, 790 N.E.2d 448, 451 (Ind. 2003). And neither was it a final, appealable order under Trial Rule 54(B). *See Martin v. Amoco Oil Co.*, 696 N.E.2d 383, 385 (Ind. 1998) (citing Trial Rule 54(B) and noting that a judgment or order as to less than all of the issues, claims, or parties in an action may become final only

---

[4] The trial court did not hold a hearing on Jurich's petition to remove the guardian.

if the trial court, in writing, expressly determines that there is no just reason for delay and, in writing, expressly directs entry of judgment).

[13] On February 10, the trial court certified the interlocutory order for appeal, and on February 18, that certification was noted in the chronological case summary. On March 18, Jurich timely filed with this court a motion to accept jurisdiction over the interlocutory appeal. A motions panel of this court denied that motion as moot, holding that "this is an interlocutory appeal as of right under Indiana Appellate Rule 14(A)." However, while the trial court's order included an attorney's fee award, which is an order for the payment of money, it did not require payment of attorney's fees at a specific time. Accordingly, the order was not appealable as of right. *See, e.g.*, *Huber v. Montgomery*, 940 N.E.2d 1182, 1184-85 (Ind. Ct. App. 2010).

[14] It is well established that a writing panel may reconsider a ruling by the motions panel. *Simon v. Simon*, 957 N.E.2d 980, 987 (Ind. Ct. App. 2011). While we are reluctant to overrule orders decided by the motions panel, this court has inherent authority to reconsider any decision while an appeal remains *in fieri*. *Id.* Here, by separate order, we have vacated our motions panel's basis for accepting jurisdiction and have instead granted Jurich's motion to accept jurisdiction over this interlocutory appeal pursuant to Indiana Appellate Rule 14(B).

# Discussion and Decision

## *Issue One: Objections to Amended Account*

[15]     Jurich first contends that the trial court erred when it approved Picicco's amended account. The trial court is vested with discretion in making determinations as to the guardianship of an incapacitated person. *See* Ind. Code § 29-3-2-4 (2016); *In re the Guardianship of A.L.C.*, 902 N.E.2d 343, 352 (Ind. Ct. App. 2009). Thus, we apply the abuse of discretion standard to review the trial court's order. *A.L.C.*, 902 N.E.2d at 352. An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances presented or if the court has misinterpreted the law.[5] *Id.*

[16]     A guardian is a fiduciary, I.C. § 29-3-1-6, and has "a statutory duty to manage the estate for the ward's best interest," *Wells v. Guardianship of Wells*, 731 N.E.2d 1047, 1051-52 (Ind. Ct. App. 2000), *trans. denied*. A guardian of an incapacitated person is responsible for the incapacitated person's care and custody and for the preservation of the incapacitated person's property to the

---

[5]  Jurich is correct that, where, as here, "'only a paper record has been presented to the trial court, we are in as good a position as the trial court . . . and will employ de novo review. . . .'" *Norris Ave. Prof'l Bldg. P'ship v. Coordinated Health, LLC*, 28 N.E.3d 296, 298 (Ind. Ct. App. 2015) (quoting *Munster v. Groce*, 829 N.E.2d 52, 57 (Ind. Ct. App. 2005)) (omissions original to *Norris*), *trans. denied*. But our de novo review is limited to the *facts*. *Anderson v. Wayne Post 64, American Legion Corp.*, 4 N.E.3d 1200, 1206 (Ind. Ct. App. 2014), *trans. denied*. Because the trial court did not make findings of fact, and because the relevant facts are undisputed, we review the trial court's approval of the amended account for an abuse of discretion.

extent ordered by the court. I.C. § 29-3-8-1(b). In particular, a guardian shall do the following:

> (1) Act as a guardian with respect to the guardianship property and observe the standards of care and conduct applicable to trustees.
>
> (2) Protect and preserve the property of the protected person subject to guardianship . . . .
>
> (3) Conserve any property of the protected person in excess of the protected person's current needs. . . .

I.C. § 29-3-8-3.

[17] Jurich maintains that the trial court should not have approved the amended account because (1) Picicco did not substantiate the amended account with sufficient evidence, namely, receipts, and (2) Picicco did not manage the estate in A.P.'s best interests. We address each contention in turn.

*Evidence*

[18] Indiana Code Section 29-1-16-4, which applies to guardianships under Indiana Code Section 29-3-2-6, provides in relevant part that, "[w]hen an account is filed, the [guardian] shall also file receipts for disbursements of assets made during the period covered by the account. Whenever the [guardian] is unable to file receipts for any disbursements, the court may permit him to substantiate them by other proof." Here, as Jurich points out, Picicco did not submit to the trial court receipts to substantiate the disbursements listed in the amended

account. However, Picicco's amended account was verified, and he submitted to the trial court an "Affidavit Regarding Receipts" stating that "he has receipts available with respect to all disbursements contained in his accounting." Appellant's App. at 75. Picicco also provided copies of those receipts to Jurich, which gave her the opportunity to review them and make objections thereto.[6] We cannot say that Picicco did not submit sufficient evidence to support the amended account.

*Best Interests*

[19] Jurich also contends that, because the amended account indicates that Picicco has not managed A.P.'s finances in a way to conserve her property "in excess of [her] current needs," the trial court should not have approved the amended account. *See* I.C. § 29-3-8-3. In particular, Jurich maintains that the trial court should not have approved the amended account because:

> • the amended accounting does not contain any affirmative statement by the Guardian that the reported expenditures were in [A.P.]'s best interest or were necessary for [her] current needs for support . . . [and] none of the disbursements identified by the Guardian include any description of, or explanation for, the purpose of the expenditure.

> • many of the figures reported in the Guardian's amended accounting are unclear and simply mathematically inaccurate.

---

[6] We note that Jurich makes no contention that the expenditures listed in the amended account do not match up with receipts provided by Picicco. She merely contends that Picicco should have submitted those receipts to the trial court.

For example, the Guardian's amended accounting contains an "ATM Detail Summary" which attempts to substantiate more than $10,000 in ATM withdrawals that were made by the Guardian or others. However, the total amount reported as having been withdrawn on any particular date is often inconsistent with the Guardian's detailed breakdown of how the funds were used. The only explanation that the Guardian even attempted to provide for such discrepancies was that "on any entry where the entire amount of the withdrawal was not spent entirely, the excess funds were retained by Ward." However, this explanation is inadequate. . . . [T]o the extent that such inconsistencies may have been caused by the unmonitored use of guardianship assets by someone other than the Guardian, the Guardian must either substantiate the accounting or be held accountable for the loss.

Appellant's Br. at 10-11. Finally, Jurich contends that

any statements made by the Guardian to explain away discrepancies in his accounting under the guise that the funds were given directly to [A.P.]—an elderly adult whom the trial court has already found to be incapable of managing her own financial affairs—should have been subjected to the highest level of scrutiny.

*Id.* at 15.

[20] But Jurich does not direct us to any case law or statute setting out guidelines a trial court must follow in considering whether to approve a guardian's interim account. Indeed, Jurich points out that,

[t]he precise questions of how "specific" an accounting must be and what constitutes a prima facie showing that the accounting is proper appear to be questions of first impression in Indiana.

Therefore, there is no common law guidance on this issue. However, Jurich contends that an accounting that provides almost no detail regarding the purpose of the reported expenditures; that fails to include receipts, in direct contravention of Ind. Code § 29-1-16-4; and that does not even contain an affirmative statement by the Guardian that the expenditures reported were in the ward's best interest or were necessary for the ward's current needs for support (i.e., that the expenditures were proper) simply does not qualify.

[21] We begin our analysis with Indiana Code Section 29-3-9-6, which provides that a guardian's written verified account must include "the incapacitated person's . . . current residence and a description of the condition and circumstances of the incapacitated person[.]" And Indiana Code Section 29-1-16-4, which, again, applies to guardianships per Indiana Code Section 29-3-2-6, provides as follows:

> Accounts rendered to the court by a personal representative shall be for a period distinctly stated and shall consist of three (3) schedules, of which the first shall show the amount of the property chargeable to the personal representative; the second shall show payments, charges, losses and distributions; the third shall show the property on hand constituting the balance of such account, if any. When an account is filed, the personal representative shall also file receipts for disbursements of assets made during the period covered by the account. Whenever the personal representative is unable to file receipts for any disbursements, the court may permit him to substantiate them by other proof. The court may provide for an inspection of the balance of assets on hand. The court may, upon its own motion, or upon petition, provide that verification of accounts or credits thereon may be made by the unqualified certificate of a certified public accountant in lieu of receipts or other proof.

Thus, while Picicco did not file receipts, the trial court is vested with discretion and "may permit" a guardian to substantiate disbursements by "other proof." *See id.* Jurich does not contend that the amended account does not conform to any other specific statutory requirements. And Jurich's bare contentions that Picicco was required to state the propriety and purpose of each expenditure finds no support in the law.

[22] In essence, Jurich maintains that the trial court should not have approved the amended account because Picicco mishandled A.P.'s funds and because the amended account includes discrepancies and errors. But the trial court did not agree, and Jurich has not persuaded us that the court abused its discretion in that regard. Indeed, the trial court's broad discretion over guardianships includes the discretion to, at any time, on its own motion, "confer upon the guardian any additional responsibilities and powers[.]" I.C. § 29-3-8-8(a)(1). Thus, if, as Jurich contends, the trial court's initial guardianship order did not permit Picicco to use A.P.'s funds to pay for meals for others or buy groceries for family members living with her, the trial court had discretion to grant such permission at any time.

[23] "A guardian is a mere officer of the court and is at all times subject to the supervision and control of the court appointing him in everything that pertains to the management of the ward's estate or to his person." *Rittenour v. Hess (In re Guardianship of Boyer)*, 96 Ind. App. 161, 174 N.E. 714, 715 (1931). Jurich submitted her verified objections to the amended account to the trial court, and the court considered and weighed the evidence when it approved the amended

account.  Jurich has not demonstrated that the trial court's order is clearly against the logic and effect of the facts and circumstances presented or contrary to law.  Given the trial court's broad discretion in management of the guardianship, we cannot say that the trial court abused its discretion when it approved the amended account.

### Issue Two:  Petition to Remove the Guardian

[24]   Finally, Jurich contends that the trial court erred when it denied her petition to remove the guardian without first holding a hearing.  Indiana Code Section 29-3-12-4 provides in relevant part that the court "may remove a guardian on its own motion or on petition of the protected person or any person interested in the guardianship, after notice and hearing, on the same grounds and in the same manner as is provided under IC 29-1-10-6 for the removal of a personal representative."  Jurich maintains that that statute required the trial court to hold a hearing on her petition to remove the guardian.

[25]   While the statute requires a hearing when a trial court removes a guardian, it does not appear to require a hearing when, as here, a court declines to remove a guardian.  *Id.*  But we need not decide whether the trial court erred when it did not hold a hearing on Jurich's petition because any error was harmless.  As Picicco points out, Jurich's allegations in her objections to amended account and in her petition to remove the guardian were identical.[7]  Thus, the trial court

---

[7] In her reply brief, Jurich asserts that she raised "additional issues" in her petition to remove the guardian, namely, "concerns about the Guardian's failure and/or refusal to address [A.P.]'s need for in-home health

considered evidence relevant to the petition to remove the guardian when it considered Jurich's objections to amended account. Indeed, on appeal, Jurich does not identify any evidence she would have proffered to the trial court at a hearing on the petition to remove the guardian that she did not include in her verified objections to the amended account. Any error in the trial court's failure to hold a hearing on Jurich's petition to remove the guardian was harmless. Ind. Appellate Rule 66.

Affirmed.

Vaidik, C.J., and Baker, J., concur.

---

care and supervision, and his failure to take [A.P.] for routine and periodic physical, mental, dental and eye examinations." Reply Br. at 14. However, in her objections to amended account filed on February 11, 2014, Jurich alleged in relevant part that Picicco had not taken to A.P. to see her doctor as ordered by the court and that Picicco "has failed to provide adequate care and supervision" of A.P. Appellant's App. at 82. Thus, these concerns were raised both in her objections to amended account and her petition to remove the guardian. Moreover, in its January 7, 2016, order the trial court stated that, "If the physical or mental condition of [A.P.] has deteriorated since the opening of the guardianship someone should file a Petition for modification of the Court's order." *Id.* at 14.