FILED

Mar 04 2026, 2:04 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Indiana Supreme Court

Supreme Court Case No. 26S-CT-71

## Shantel Waggoner, Individually and as Executrix of the Estate of Elmer Gordon Waggoner,
*Appellant (Plaintiff below),*

—v—

## Anonymous Health System, Inc., et al.,
*Appellees (Defendants below).*

---

Argued: September 25, 2025 | Decided: March 4, 2026

Appeal from the Vanderburgh Superior Court
No. 82D01-2308-CT-3727
The Honorable Leslie C. Shively, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 24A-CT-469

---

**Opinion by Justice Goff**

Chief Justice Rush and Justices Massa, Slaughter, and Molter concur.

**Goff, Justice.**

In response to the COVID-19 pandemic, our state and federal governments declared a state of emergency to prevent the spread of the virus. To protect healthcare workers at the frontlines, the legislature enacted statutes to immunize them from civil liability in certain cases where a patient's injury arose from actions taken in response to COVID-19. Here, a patient was medically immobilized and placed on a ventilator as part of his COVID-19 treatment. He developed a bed sore and ultimately died from the wound. His estate filed a proposed complaint under the Medical Malpractice Act (MMA) against over eighty Healthcare Providers (or just the Providers), alleging negligence. In response, the Providers argue they are immune from liability under statute. The issues here are (1) whether the trial court can make a preliminary determination on immunity without expert opinion from a medical-review panel, and (2) whether the Providers are entitled to statutory immunity. Concluding that the court can make a preliminary determination on immunity and that Providers are immune here, we affirm the trial court's entry of summary judgment for the Providers.

## Facts and Procedural History

On March 6, 2020, Governor Eric Holcomb issued Executive Order 20-02, declaring the COVID-19 pandemic a state public-health emergency under Indiana Code subsection 10-14-3-12(a). The emergency was rescinded on March 3, 2022. Exec. Order 22-09. Similarly, the Secretary of the United States Department of Health and Human Services (HHS) issued a federal public-health emergency on March 17, 2020. 85 Fed. Reg. 15198, 15198 (Mar. 17, 2020). The public-health emergency under the Public Health Service Act was rescinded on May 11, 2023, with some liability protections under the Public Readiness and Emergency Preparedness Act (PREP Act) extending longer. 89 Fed. Reg. 99875, 99876, 99882 (Dec. 11, 2024).

In January 2022, while the state and federal health emergencies were still in effect, Elmer Waggoner was hospitalized in Kentucky after testing

positive for the COVID-19 virus and developing pneumonitis. As his symptoms worsened, he was transported to a second Kentucky hospital where he was intubated and put on a ventilator. Then, on January 27, he was transferred to Anonymous Hospital 1 in Indiana where he was medically paralyzed and kept on a ventilator. The ventilator was briefly removed in early February but replaced within four days. On February 10, 2022, Elmer developed a pressure wound, also known as a bed sore, on his lower back and began wound care.

On March 3, 2022, Elmer was still on a ventilator but was not testing positive for the COVID-19 virus when he was transferred to Anonymous Hospital 3, also in Indiana. The same day, Governor Holcomb rescinded the COVID-19 state of emergency. The federal public-health emergency was still in effect. Elmer's bed sore continued to worsen and showed signs of necrosis. On March 17, Elmer was transferred back to Anonymous Hospital 1 where he died twelve days later.

Elmer's death certificate listed his cause of death as cardiopulmonary arrest with the following conditions leading to the arrest: acute hypoxic and hypercapnic respiratory failure, sepsis, and necrotizing fasciitis. When he died, Elmer's bed sore spanned from the outside of his left thigh to his lower back.

In March 2023, Elmer's wife and the executrix of his estate, Shantel Waggoner (the Estate), filed a proposed complaint with the Indiana Department of Insurance. The Estate alleged that over eighty proposed defendants, including hospitals and doctors, had committed medical malpractice while treating the bed sore. In May 2023, the federal government rescinded its declaration of a public-health emergency for COVID-19. In July 2023, one of the Providers requested the formation of a medical-review panel. In August 2023, before the panel could be established, Providers filed a petition for preliminary determination and motion for summary judgment, arguing that they were immune from liability under Indiana Code chapter 34-30-13.5 (the Healthcare Immunity Act), Indiana Code chapter 34-30-32 (2022) (expired December 31, 2024) (the Premises Immunity Act), and 42 U.S.C. section 247d-6d (the PREP Act) (collectively, the Immunity Statutes). Providers argued they were

immune from liability because they provided medical care to Elmer during the COVID-19 emergency, and all his care was in treatment of his COVID-19 infection and its complications.

The Estate moved to dismiss or stay the Providers' petition, arguing that the trial court lacked subject-matter jurisdiction to make a preliminary decision on immunity. The Estate argued that the Providers' motion for summary judgment required the trial court to address medical causation, which falls within the medical-review panel's subject-matter jurisdiction under the MMA.

The trial court issued an order granting Providers' motion for summary judgment and dismissing the complaint with prejudice after finding the Providers entitled to statutory immunity. The trial court found that immunity was an issue for the court, not the medical-review panel. The trial court then determined the Providers were immune under the Immunity Statutes because Elmer's care arose from the COVID-19 emergency, even though he received some care after the state-emergency order expired. The Estate appealed.

In a unanimous, published opinion, the Court of Appeals reversed, holding that whether the Providers are entitled to immunity is an issue reserved for the medical-review panel. *Waggoner v. Anonymous Healthcare Sys., Inc.*, 250 N.E.3d 1091, 1094 (Ind. Ct. App. 2025). Although Elmer was originally hospitalized and treated for his COVID-19 symptoms, the court explained, the Estate's expert opined that Elmer's death was caused by inadequate treatment of the pressure wound, not by his COVID-19 symptoms. *Id.* at 1099. Therefore, the court concluded that "the question of causation should be left to the medical review panel," and it was "too early in the proceedings to determine" whether the Immunity Statutes immunized the Providers. *See id.* at 1100. The Governor also rescinded the state disaster emergency during Elmer's treatment, so the court concluded the Healthcare Immunity Act did not immunize treatment after that date. *Id.* at 1099.

Providers petitioned for transfer, which we now grant, vacating the opinion of the Court of Appeals. *See* Ind. Appellate Rule 58(A).

## Standards of Review

We will grant summary judgment when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). We will draw all reasonable inferences in favor of the non-moving party. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). We review a trial court's summary-judgment ruling under a de novo standard. *Id.* In addition, the scope of the trial court's preliminary-determination jurisdiction and interpretation of the Immunity Statutes are legal questions we review de novo. *See Gierek v. Anonymous 1*, 250 N.E.3d 378, 384 (Ind. 2025); *see ESPN, Inc. v. Univ. of Notre Dame Police Dep't*, 62 N.E.3d 1192, 1195 (Ind. 2016).

## Discussion and Decision

Because it is undisputed for summary-judgment purposes that the alleged negligent treatment arose from COVID-19, we conclude that the trial court can make a preliminary determination on immunity by interpreting the relevant statutes without the opinion of the medical-review panel. We also conclude the Providers here are immune from liability under the Immunity Statutes because Elmer's treatment arose from COVID-19.

## I. The MMA permits the trial court to assert jurisdiction on the threshold question of immunity.

Under the MMA, a medical-review panel typically must first "render an opinion on a claimant's proposed complaint before the claimant can sue a health-care provider in court." *Gierek*, 250 N.E.3d at 394 (quoting *Cmty. Health Network, Inc. v. McKenzie*, 185 N.E.3d 368, 376 (Ind. 2022)). Although a "claimant may commence an action in court for malpractice at the same time the claimant's proposed complaint is being considered by a medical review panel," Ind. Code § 34-18-8-7(a), the trial court has "limited authority to assert jurisdiction over threshold issues while a

proposed complaint is pending before the medical review panel," *Lorenz v. Anonymous Physician #1*, 51 N.E.3d 391, 396 (Ind. Ct. App. 2016) (citing I.C. § 34-18-8-7(a)(3)). "[A]n issue that does not require expert opinion is not reserved to the medical review panel and may be subject to preliminary determination by the trial court." *Gierek*, 250 N.E.3d at 396 (internal quotation marks and citation omitted).

The limited authority under the MMA to assert jurisdiction over threshold issues permits the trial court to "preliminarily determine an affirmative defense or issue of law or fact that may be preliminarily determined under the Indiana Rules of Procedure." *Id.* at 394 (quoting I.C. § 34-18-11-1(a)(1)). But the MMA prohibits a trial court from issuing a preliminary determination on "any affirmative defense or issue of law or fact reserved for written opinion by the medical review panel." I.C. § 34-18-11-1(b). This can include opinions on whether the "defendants failed to comply with the appropriate standard of care" and whether the "conduct complained of was or was not a factor of the resultant damages." *Id.*; I.C. §§ 34-18-10-22(b)(1), (4). In other words, questions about the standard of care and causation are generally reserved for the medical-review panel.

The Estate argues, and the Court of Appeals agreed, that the trial court cannot make a preliminary determination on statutory immunity here because the medical-review panel needs to first opine on the cause of Elmer's death. Providers, on the other hand, argue that the trial court can make a preliminary determination on statutory immunity because it does not require expert opinion.

We agree with the Providers.

Asserting the affirmative defense of immunity "assumes negligence but denies liability." *Putnam Cnty. Sheriff v. Price*, 954 N.E.2d 451, 453 (Ind. 2011). By arguing they are immune, the Providers, for purposes of the preliminary determination, admit the Estate's essential allegation that Elmer died from negligent treatment of an infected bed sore and related complications. Assuming Elmer died from the bed sore, there is no need for expert opinion to determine whether Providers' *treatment* of the bed sore was related to COVID-19. *See Haggerty v. Anonymous Party 1*, 998 N.E.2d 286, 292 (Ind. Ct. App. 2013) (holding the trial court had

jurisdiction to preliminarily determine the issue of immunity where expert opinion was not necessary to the determination); *Ashley v. Anonymous 1*, 245 N.E.3d 658, 2024 WL 4142508, * 3 (Ind. Ct. App. Sep. 11, 2024) (mem.) (holding that, given the admission a patient developed bed sores while being treated for COVID-19, "no expert opinion was required to determine whether [the patient's] injury was related to the actions taken by [p]roviders (i.e., placing him on a ventilator for an extended period of time) to treat him for complications of COVID-19"), *trans. denied*. In other words, while expert opinion would have been necessary if the Immunity Statutes required COVID-19 to be the cause of Elmer's death, no expert opinion is needed here to determine if *treatment of the bed sore* was related to COVID-19. *See infra* Section II. So, expert opinion from the medical-review panel is not needed, and the court can interpret the relevant statutes to make a preliminary determination on immunity.

Having concluded that a court can make a preliminary determination on immunity here, we turn to the Immunity Statutes.

## II. The Providers are immune from civil liability under state and federal law.

Providers are immune from liability under the state Healthcare Immunity Act and state Premises Immunity Act because Elmer's treatment arose in response to the state disaster emergency for COVID-19. Likewise, Providers are also immune from liability under the federal PREP Act because Elmer's death arose from use of a covered countermeasure, a ventilator, to treat COVID-19.

### A. Providers are immune from civil liability under state law.

The Providers are immune from civil liability for Elmer's death under the Healthcare Immunity Act and Premises Immunity Act because his treatment arose from COVID-19.

The Healthcare Immunity Act was enacted as part of broader legislation to insulate and protect areas of public life at risk from the COVID-19 pandemic. *See Mellowitz v. Ball State Univ.*, 221 N.E.3d 1214, 1218–19 (Ind. 2023). The Healthcare Immunity Act provides in pertinent part that a healthcare provider "may not be held civilly liable for an act or omission relating to the *provision or delay of health care services* or emergency medical services *arising from* a state disaster emergency declared under IC 10-14-3-12 to respond to COVID-19." I.C. § 34-30-13.5-1(b)(1) (emphases added). Damages *arising from* a state disaster emergency means an injury or harm "caused by or resulting from *an act or omission* performed in response to a state disaster emergency declared under IC 10-14-3-12 to respond to COVID-19," and "arising from COVID-19." I.C. § 34-6-2.1-13 (formerly codified at I.C. § 34-6-2-10.5 (2022)) (emphasis added). "Arising from COVID-19" means an injury or harm caused by "services, treatment, or other actions performed for COVID-19." I.C. § 34-6-2.1-14(b)(2) (formerly codified at I.C. § 34-6-2-10.4(b)(2) (2022)). This immunity applies "during a period of a state disaster emergency declared under IC 10-14-3-12 to respond to COVID-19, if the state of disaster emergency was declared after February 29, 2020, and before April 1, 2022." I.C. § 34-30-13.5-1(b).

Furthermore, the Premises Immunity Act protects healthcare providers from civil liability for providing services during the COVID-19 pandemic. Under the Premises Immunity Act, "a person is immune from civil tort liability for damages arising from COVID-19: (1) on the premises owned or operated by the person" or "(2) on any premises on which the person or an employee or agent of the person provided property or services to another person." I.C. §§ 34-30-32-6(1), (2) (2022). Damages "arising from COVID-19" means "an injury or harm caused by or resulting from: (1) the actual, alleged, or possible exposure to or contraction of COVID-19" or "(2) *services, treatment*, or other actions *performed for* COVID-19." I.C. § 34-30-32-2 (2022) (emphases added). Although it expired on December 31, 2024, the Premises Immunity Act applies to causes of action that accrued on or after March 1, 2020. I.C. §§ 34-30-32-1, -11 (2022).

Here, the Estate argues that Elmer's death did not arise from a state disaster emergency or arise from COVID-19 because he was not testing

positive for COVID-19 when he died, and instead, his death was caused by Providers' failure to treat his bed sore. Appellant's Br. at 22; Appellant's App. Vol. 4, pp. 88–89 (sworn affidavit of Elmer's wife); Appellant's App. Vol. 3, p. 109 (the Estate's expert opining that Elmer's bed sore progressed to necrotizing fasciitis which "caused and hastened his death"). The Estate therefore also argues that the medical-review panel needs to decide if Elmer's death was caused by COVID-19, the bed sore, or something else. But assuming the facts alleged in the complaint are true—Elmer developed a bed sore and then died—Elmer's *treatment* still arose from COVID-19, making the Providers immune under the state immunity statutes.

At least two decisions from the Court of Appeals support our conclusion. In *Ashley*, the Court of Appeals held that medical providers were immune from liability when the patient developed bed sores during his treatment for COVID-19. 2024 WL 4142508 at *1–*2. The court concluded that the patient's injuries arose from services provided for COVID-19 because he developed the bed sores while medically immobilized for an extended period of time to be placed on a ventilator as part of his COVID-19 pneumonia treatment. *Id.* at *4. And in *Fluhr v. Anonymous Doctor 1*, the Court of Appeals held that medical providers were immune from liability under the Healthcare Immunity Act when they delayed treating the patient's stroke to conduct COVID-19 isolation procedures. 234 N.E.3d 912, 915, 917, 918 (Ind. Ct. App. 2024), *trans. denied*. Even though the patient did not have COVID-19, the delay in treatment arose from measures taken to limit the spread of COVID-19. *Id.* at 917.

Like the patients in *Ashley* and *Fluhr*, Elmer's injuries arose from treatment in response to COVID-19. According to the Estate's own expert, when Elmer developed COVID-19, he suffered from intractable respiratory failure and needed mechanical ventilation to live. Appellant's App. Vol. 3, p. 109. By being immobilized for an extended period of time as part of his COVID-19 treatment, the expert opined, Elmer developed the bed sore. *Id.* Even assuming the Estate is correct that Elmer died from a failure to treat his bed sore rather than COVID-19, he would not have developed the bed sore in the first place had he not developed COVID-19 and needed the assistance of a ventilator. Therefore, his injuries arose

from *services provided in response* to the "state disaster emergency" or from "services, treatment, or other actions performed for COVID-19," making the Providers immune under the Healthcare Immunity Act and Premises Immunity Act.

Still, the Estate argues that the Healthcare Immunity Act does not apply because the state disaster emergency expired before Elmer died. The Governor first declared the state disaster emergency on March 6, 2020, and Elmer began treatment at Anonymous Hospital 1 on January 27, 2022, during the emergency. The Governor then rescinded the state disaster emergency on March 3, 2022, and Elmer died later that month on March 29, 2022. Although Elmer died after the emergency expired, the Providers' care still arose in response to and *during* the state disaster emergency. That some of the Providers' care extended beyond the expiration of the emergency does not change the fact that their services still *arose* during the emergency. Therefore, the civil immunity afforded by the Healthcare Immunity Act could "appl[y] to medical services provided either before or after the actual disaster emergency declaration from the Governor." 2017 Ind. Op. Att'y Gen. No. 8, at 6 (Dec. 4, 2017). And even if the Healthcare Immunity Act no longer applied, the Premises Immunity Act still applied because it did not expire until 2024, after Elmer's death.

Finally, the Estate argues that the Providers are not immune or that the medical-review panel should decide immunity because the Estate alleged that Providers were grossly negligent. Under the Healthcare Immunity Act, a provider "is not immune from civil liability if the damages resulting from the act or omission relating to the provision or delay of the health care services resulted from the person's gross negligence, willful or wanton misconduct, fraud, or intentional misrepresentation." I.C. § 34-30-13.5-2. The Premises Immunity Act also does not provide immunity for "gross negligence or willful or wanton misconduct." I.C. § 34-30-32-7 (2022). "Gross negligence" is the "conscious, voluntary act or omission in reckless disregard of … the consequences to another party." *N. Ind. Pub. Serv. v. Sharp*, 790 N.E.2d 462, 465 (Ind. 2003) (quoting Black's Law Dictionary 1057 (7th ed. 1999)). For willful or wanton misconduct, the wrongdoer must intentionally engage in misconduct or be conscious of

the misconduct and the probability it will cause injury. *Hershberger v. Brooker*, 421 N.E.2d 672, 678, 680 (Ind. Ct. App. 1981).

The Estate alleged for the first time that Elmer's injuries were due to gross negligence, willful or wanton misconduct, fraud, or intentional misrepresentation in its response to Providers' motion for summary judgment. Appellant's App. Vol. 2, pp. 22, 187, 192. But the Estate failed to designate any evidence to support finding gross negligence. The Estate provided a report where an expert opined that necrotizing fasciitis caused and hastened Elmer's death and that Elmer's bed sore was "inadequately treated," Appellant's App. Vol. 3, p. 109, but the Estate provided no evidence that Providers consciously or intentionally mistreated Elmer, *see McGowen v. Montes*, 152 N.E.3d 654, 660–62 (Ind. Ct. App. 2020) (finding summary judgment proper where the designated evidence undisputably showed that the defendant was not grossly negligent and did not commit willful or wanton misconduct), *trans. denied*. Therefore, the exception to immunity for gross negligence does not apply.

## B. Providers are immune under the federal PREP Act.

Even if expiration of the state disaster emergency deprived the Providers of immunity, and even if the Estate designated evidence of gross negligence, the Providers are still immune from liability under the federal PREP Act.

The PREP Act authorizes the HHS to issue a declaration in the event of a public-health emergency. *See* 42 U.S.C. § 247d(a). Once the declaration is issued, the PREP Act immunizes "covered person[s]" from "suit and liability *under Federal and State law* with respect to all claims for loss *caused by, arising out of, relating to, or resulting from* the administration to or the use by an individual of a *covered countermeasure*" to respond to the emergency. 42 U.S.C. § 247d-6d(a)(1) (emphases added). In other words, the PREP Act preempts claims under state law, such as negligence, as it relates to the administration of covered countermeasures. A "covered countermeasure" includes a "qualified pandemic or epidemic product." 42 U.S.C. § 247d-6d(i)(1)(A). A medical device is a "qualified pandemic or epidemic product" when it is used "to diagnose, mitigate, prevent, treat,

or cure a pandemic or epidemic" or "to limit the harm such pandemic or epidemic might otherwise cause," and is "authorized for emergency use" by the FDA. 42 U.S.C. § 247d-6d(i)(7)(A)(i); 42 U.S.C. § 247d-6d(i)(7)(B)(iii). And a "covered person" includes those qualified to administer countermeasures. 42 U.S.C. § 247d-6d(i)(2)(B)(iv). If a patient alleges injuries caused by the administration of covered countermeasures, the plaintiff's exclusive remedy is to seek compensation from the federal "Covered Countermeasures Process Fund." 42 U.S.C. §§ 247d-6e(a), (b)(4), (d)(4).

Here, the HHS Secretary issued an emergency declaration on March 17, 2020, triggering the PREP Act and declaring "the spread of" COVID-19 "a public health emergency." 85 Fed. Reg. at 15198. The federal public-health emergency under the Public Health Service Act ended in May 2023, with some PREP immunity extending even longer, meaning the entirety of Elmer's treatment and death occurred while PREP immunity was in effect. 89 Fed. Reg. at 99876, 99882. What's more, Elmer's injuries were "caused by, ar[ose] out of, relat[ed] to, or result[ed] from" the provision of a covered countermeasure—a ventilator—in response to COVID-19. Elmer's ventilator was a covered countermeasure because it was used to treat COVID-19, and ventilators were authorized by the FDA for emergency use. *See* Letter from Denise M. Hinton, Chief Scientist, FDA, to Manufacturers and Other Stakeholders (Mar. 24, 2020), https://www.fda.gov/media/136423/download?attachment. Next, the Estate's own expert opined that Elmer's bed sore was caused by being medically immobilized for an extended period so that he could be placed on a ventilator. Appellant's App. Vol. 3, p. 109. Because the Estate's claims arise from the Providers' provision of a covered countermeasure during the public-health emergency, the Providers are "covered persons" and immune under the PREP Act from civil liability for both federal and state-law claims. Although the Estate argues Elmer's death arose from a bed sore, not COVID-19, the "chain of events cannot be separated from the administration of a covered countermeasure." *See Cowen v. Walgreen Co.*, No. 22-CV-157-TCK-JFJ, 2022 WL 17640208, at *3 (N.D. Okla. Dec. 13, 2022). Elmer would not have developed the bed sore and needed a

ventilator as a treatment had he not suffered respiratory failure from COVID-19.

Nor does the PREP Act's exception to immunity for willful misconduct apply here. Under the PREP Act, "the sole exception to the immunity from suit and liability of covered persons ... shall be for an *exclusive Federal cause of action* against a covered person for death or serious physical injury proximately caused by *willful misconduct*." 42 U.S.C. § 247d-6d(d)(1) (emphases added). Willful misconduct consists of acts or omissions taken "(i) intentionally to achieve a wrongful purpose; (ii) knowingly without legal or factual justification; and (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that harm will outweigh the benefit." 42 U.S.C. § 247d-6d(c)(1)(A). A plaintiff asserting a willful-misconduct claim must first seek compensation from the Covered Countermeasures Process Fund. 42 U.S.C. § 247d-6e(d)(1). If the plaintiff is eligible for compensation but chooses to instead file suit, the plaintiff must file in the United States District Court for the District of Columbia. 42 U.S.C. § 247d-6d(e)(1). Because the federal court has exclusive jurisdiction over any willful misconduct claim, and because the Estate did not make such a claim in federal court, the PREP Act's exception to immunity does not apply.

Because the Providers are immune from civil liability here, the trial court did not err in granting summary judgment to Providers.

## Conclusion

Our lawmakers chose as a matter of policy to immunize healthcare providers working the frontlines in response to the COVID-19 emergency. Assuming the patient here died from his bed sore rather than COVID-19, his bed sore still arose from treatment he was receiving due to his COVID-19. Therefore, the Providers' services here fall within the Immunity Statutes. We affirm.

Rush, C.J., and Massa, Slaughter, and Molter, JJ., concur.

ATTORNEY FOR APPELLANT
Arie J. Lipinski
Lipinski Law
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
ANONYMOUS SURGERY
CENTER 1 AND ANONYMOUS
PHYSICIANS 18, 20, 22, 28,
31, 48, & 56
Katherine M. Haire
Trenton W. Gill
Reminger Co., LPA
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
ANONYMOUS PHYSICIAN 29
Ryan T. Wood
Kyle L. Childress
Barnes Maloney, PLLC
Louisville, Kentucky

ATTORNEYS FOR APPELLEE
ANONYMOUS PHYSICIAN 55
David S. Strite
Nicholas J. Davis
O'Bryan, Brown & Toner, PLLC
Louisville, Kentucky

ATTORNEY FOR APPELLEES
ANONYMOUS HEALTH
SYSTEM, INC., ANONYMOUS
HOSPITAL 1 INC,
ANONYMOUS PHYSICIAN
GROUPS 1–4, ANONYMOUS
HOSPITAL 2, ANONYMOUS
HOSPITAL 2, LLC,
ANONYMOUS CLINIC, INC.,

ANONYMOUS PHYSICIANS
1–3, 5–12, 14–17, 19, 21, 23–
27, 30, 32, 34, 39, 43–47, 50, 52
& 54, ANONYMOUS
PHYSICAL THERAPISTS 1–3,
AND ANONYMOUS
OCCUPATIONAL
THERAPISTS 1–3
Colleen O. Davis
Thompson Miller & Simpson, PLC
Louisville, Kentucky

ATTORNEYS FOR APPELLEES
ANONYMOUS HOSPITAL 3,
ANONYMOUS HOSPITAL 3,
LLC, ANONYMOUS
OCCUPATIONAL
THERAPISTS 4 & 5, AND
ANONYMOUS PHYSICAL
THERAPIST 4
Allyson R. Breeden
Alyssa F. Ricker
Stoll Keenon Ogden, PLLC
Evansville, Indiana

ATTORNEYS FOR APPELLEES
ANONYMOUS PHYSICIANS
13, 35–38, 40–42
Margaret M. Christensen
Moncerrat Z. Alvarez
Dentons Bingham Greenebaum LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
ANONYMOUS PHYSICIAN 4
Patrick P. Devine
Sam S. Zabaneh
Hinshaw & Culbertson LLP
Schererville, Indiana

ATTORNEYS FOR APPELLEE
ANONYMOUS PHYSICIAN 51
Mark E. Hammond
Morgan N. Blind
O'Bryan, Brown & Toner, PLLC
Louisville, Kentucky

ATTORNEY FOR APPELLEE
ANONYMOUS PHYSICIAN 53
Jon M. Pinnick
Schultz & Pogue, LLP
Indianapolis, Indiana